DECISION AND JUDGMENT
{¶ 1} This is an appeal from a judgment of the Lucas County Court of Common Pleas, Juvenile Division, that terminated the parental rights of appellant, Jamie J., the natural mother of Savannah J., and granted permanent custody of Savannah J. to appellee, Lucas County Children Services ("LCCS"). *Page 2 
 {¶ 2} Appellant and her now ex-husband, Robert J., have a history with LCCS. A case was opened in November 2004, based on allegations against Robert J. of physical abuse of one of appellant's sons by a prior relationship, domestic violence and substance abuse. The children, Gary M. (born in October 1995), Gage M. (born in February 2008), and Robert J., II (born in September 2004), were removed from the home. Gary was adjudicated to be abused and all three children were found to be dependent. Appellant completed parenting classes and domestic violence counseling as part of the case plan for those three children. Robert J. was to participate in domestic violence counseling and parenting classes and was to obtain a substance abuse evaluation. He failed to complete any of the terms of that case plan. Ultimately, legal custody of Gary and Gage was awarded to their father, and at a December 2006 permanent custody hearing, appellant consented to awarding permanent custody of Robert J., II, to LCCS.
 {¶ 3} Savannah J. was then born in January 2007. At a staffing at the LCCS offices shortly after Savannah J.'s birth, appellant and Robert J. stated that they would not participate in any further case plan services. LCCS then filed a complaint in dependency, seeking original permanent custody of Savannah J. and a reasonable efforts by-pass on January 22, 2007. Shelter care custody of Savannah J. was awarded to LCCS and Savannah J. was placed with the foster parents who had adopted Robert J., II.
 {¶ 4} At a hearing on March 27, 2007, appellant and Robert J. stipulated to the matters alleged in the complaint and agreed to a finding of dependency. The parties further agreed that the paternal grandparents, who lived in Michigan, might be a viable *Page 3 
placement and custody option. In order to facilitate an interstate home study of the paternal grandparents, both an adjudication and disposition order were required. Accordingly, the parties agreed to an award of legal custody of Savannah J. to LCCS. LCCS made it clear, however, that it had not in any way changed its position regarding permanent custody and was only agreeing to take legal custody of Savannah J. so that an interstate home study of the paternal grandparents could be accomplished. In a judgment entry of April 4, 2007, the lower court awarded legal custody of Savannah J. to LCCS.
 {¶ 5} Subsequently, the state of Michigan determined that the paternal grandparents were not an appropriate placement. Accordingly, on September 13, 2007, LCCS filed a motion for permanent custody of Savannah J. pursuant to R.C. 2151.353(B) and 2151.414. The trial on the motion for permanent custody came before the court on March 11, 2008. Robert J. failed to appear and the lower court granted Robert J.'s attorney's motion to withdraw as counsel.[1] The following evidence was then submitted to the lower court.
 {¶ 6} Amy Rose, the LCCS caseworker, testified that she had been the caseworker for this family for almost three years. She was initially assigned to the prior case involving the other three children and then continued as the caseworker upon the birth of Savannah J. Rose testified that when the present case was filed, the significant issues facing the family were the domestic violence between appellant and Robert J., *Page 4 
appellant's continued relationship with Robert J., parenting issues, and concerns of substance abuse on Robert J.'s part. These issues did not differ substantially from the issues involved in the prior case, although Rose stated that the sole reason for Savannah's removal from appellant's care was appellant's failure to separate from Robert J. Because of these issues, and because both parents stated that they did not want case plan services, no services were offered to the parents and appellee filed for permanent custody.
 {¶ 7} Nevertheless, domestic violence counseling and parenting classes were suggested to appellant and Robert J., and substance abuse services were suggested to Robert J. Rose testified that appellant had previously completed two parenting classes and two domestic violence programs involving her other three children. At the time of the trial below, appellant was again attending a domestic violence program, which she began in January 2008, and had completed nine of twelve sessions. She also engaged in personal counseling. Rose stated, however, that in talking with appellant, Rose was concerned because despite her involvement in three domestic violence programs, appellant still could not identify the domestic violence issues in her own relationship with Robert J. In particular, Rose noted that appellant has a history of leaving Robert J., and then returning to him. She has filed for divorce from him on three occasions, finally going through with it and obtaining a divorce just five days before the trial below. Despite the divorce, Rose was not convinced that appellant had fully separated herself from Robert J. and, based on appellant's history, was unsure that this would be a permanent separation. *Page 5 
 {¶ 8} Other issues that concerned Rose involved appellant's dealings with money and employment. Rose testified that appellant was in a bad car accident several years ago. Appellant later received a settlement of between $20,000 and $25,000. Appellant did not have a bank account so, after paying off some bills, she gave the remainder of the settlement funds to Robert J. Rose stated that appellant did not know or seem concerned about what happened to that money. At the time of the trial below, appellant had no job or source of income, and no way to provide for her daughter. She had recently been fired from a job with a cleaning company and was living with her mother. While Rose had no problem with the home itself, she testified that appellant had lived there in the past and that it was not a permanent home. Rose therefore testified that appellant lacked stable housing and employment.
 {¶ 9} Regarding Savannah J., Rose testified that she was very bonded to her foster family and particularly to her brother Robert J., II, whom the foster family had adopted. Rose believed that an award of permanent custody would be in Savannah's best interest and stated that the foster family would like to adopt Savannah. Nevertheless, she agreed that appellant had regularly visited Savannah and that appellant and Savannah were bonded.
 {¶ 10} Pat B., appellant's mother, also testified at the trial below. She stated that appellant then lived with her, but that she cannot live with her indefinitely, even if Savannah is returned to her. Pat stated that she loves her daughter and wants to help her, but that her daughter is 30 years old and she cannot support appellant and her child *Page 6 
forever. She discussed appellant's history with Robert J., and appellant's pattern of leaving him, filing for divorce, and then returning to him. Although appellant did finally divorce Robert J., Pat testified that she has Spyware installed on her computer and that it revealed appellant regularly accessed Robert J.'s MySpace page. She further stated that Robert J. had called her house for appellant a couple of times and that in discussing the divorce, appellant told him not to worry and that it would be over soon. Pat testified that appellant is not employed and has no source of income, although she did go to school to become a phlebotomist. Pat further stated that she cannot afford to support appellant and her child. She revealed that at one time, she took in Robert J., II, so that appellant could get herself together, but appellant went back to Robert J. and would not return to care for her son. Based on appellant's history, Pat did not believe that appellant was in a position at this time to take care of Savannah.
 {¶ 11} Next, Erica S., Savannah's foster mother testified. Erica and her husband adopted Robert J., II ("Bobby"), and have fostered Savannah since shortly after her birth. Erica stated that Bobby and Savannah are very bonded, and that Savannah also sees her two half-brothers, Gary and Gage. Erica stated that if Savannah becomes available for adoption, she and her husband would love to adopt her. She has known appellant for years and has had weekly contact with appellant since Savannah has lived in her home. In Erica's opinion, the visits have gone well, and she stated that if she were to adopt Savannah, she would allow appellant to have continued contact with her. Erica testified that she believes that appellant is still in contact with Robert J. because appellant's and *Page 7 
Robert J.'s stories regarding contact are inconsistent. In addition, Erica testified that in February 2008, shortly before the trial, appellant and Robert J. had accepted each other as friends on MySpace for a day. The pages from appellant's MySpace account were admitted into evidence and Erica identified a picture of a man as that of Robert J.
 {¶ 12} Appellant and her father, Jim B., testified on appellant's behalf as follows. Appellant stated that although she had previously maintained a relationship with Robert J., she separated from him in August 2007, after realizing that she wanted Savannah back. In addition, she stated that she enrolled in classes to become a phlebotomist and finished her training in October 2007. She does not yet have a job, but stated that she has sent out resumes and has called the Red Cross. Appellant agreed that when Savannah was born, she told LCCS that she would not participate in any services, but stated that in hindsight, that was not a good choice and that after she left Robert J. in August, she began individual counseling with Unison, and reenrolled in parenting and domestic violence classes. Appellant did not deny that she and Robert J. had a troubled past, but she denied contacting him through MySpace and denied inviting him to be her friend on MySpace. Appellant did, however, admit going to Robert J.'s MySpace page to see pictures of his new girlfriend, and admitted looking at pictures on his mother's MySpace page. Regarding her future, appellant stated that if she regains custody of Savannah she intends to get a job to support her and that her dad is willing to help. She also stated that she is currently living with her mother and that her plan is to stay with her mother until she gets a job and can get her own place. *Page 8 
 {¶ 13} Jim B., appellant's father, testified that since August 2007, appellant has taken steps to improve her life, by divorcing Robert J., and going to counseling and taking domestic violence classes. Although he agreed that appellant had not exercised good judgment in the past, he believed that she has now left Robert J. for good and is taking the right steps to improve her life.
 {¶ 14} In addition to the above witnesses, Amanda Taylor, the guardian ad litem appointed to Savannah, testified at the trial below. Taylor also submitted a written report and recommendation. Taylor stated that Savannah has been in her foster placement for 14 months. She has observed Savannah in that foster placement and described Savannah as a very happy, well-rounded child who is very well bonded to her foster family and to her brother. She is also on target developmentally. Taylor testified that in her opinion, appellant does not currently have the ability to take care of Savannah and be financially responsible for her. In particular, she did not believe that appellant's plan to rely on her parents for help was adequate. She therefore believed that permanent custody was in Savannah's best interest.
 {¶ 15} On April 15, 2008, the lower court issued its decision and judgment entry which terminated the parental rights of appellant and Robert J. First, the court determined that Savannah cannot or should not be returned to appellant because appellant has had her parental rights involuntarily terminated pursuant to R.C. 2151.353, 2151.414 or2151.415, with respect to a sibling of Savannah; she is unwilling to provide food, clothing, shelter, and other basic necessities for Savannah or to prevent Savannah from *Page 9 
suffering physical, emotional, sexual abuse or physical, emotional, or mental neglect because of her repeated unemployment and lack of stable housing; and she has continued to have contact with Robert J. despite a long history of domestic violence.
 {¶ 16} On the issue of Savannah's best interest, the lower court considered Savannah's interaction and interrelationship with her parents, siblings, relatives, foster parents, out-of-home providers and others; Savannah's placement history; Savannah's need for a legally secure permanent placement; and that Savannah's foster parents have indicated they wish to adopt Savannah should she become available for adoption. The court then determined that an award of permanent custody was in Savannah's best interest. The court then awarded LCCS permanent custody of Savannah and terminated the parental rights of appellant and Robert J.
 {¶ 17} Appellant now challenges that judgment through the following assignments of error:
 {¶ 18} "I. The trial court erred in finding that appellee Lucas County Children Services Board had made a reasonable effort to reunify the minor child with the appellant.
 {¶ 19} "II. The trial court erred in granting appellee Lucas County Children Services Board's motion for permanent custody as it was against the manifest weight of the evidence."
 {¶ 20} Because appellant's assignments of error are related, they will be discussed together. Appellant essentially challenges the factual findings made by the trial court. *Page 10 
 {¶ 21} The disposition of a child determined to be dependent, neglected or abused is controlled by R.C. 2151.353 and the court may enter any order of disposition provided for in R.C. 2151.353(A). Before the court can grant permanent custody of a child to a public services agency, however, the court must determine: (1) pursuant to R.C. 2151.414(E) that the child cannot be placed with one of her parents within a reasonable time or should not be placed with a parent; and (2) pursuant to R.C. 2151.414(D), that the permanent commitment is in the best interest of the child. R.C. 2151.353(A)(4). R.C. 2151.414(E) provides that, in determining whether a child cannot be placed with a parent within a reasonable time or should not be placed with a parent, the court shall consider all relevant evidence. If, however, the court determines by clear and convincing evidence that any one of the sixteen factors listed in the statute exist, the court must find that the child cannot be placed with the parent within a reasonable time or should not be placed with the parent. Those factors include:
 {¶ 22} "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medial, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for *Page 11 
the purpose of changing parental conduct to allow them to resume and maintain parental duties.
 {¶ 23} "* * *
 {¶ 24} "(11) The parent has had parental rights involuntarily terminated pursuant to this section or section 2151.353 [2151.35.3] or 2151.415 [2151.41.5] of the Revised Code with respect to a sibling of the child.
 {¶ 25} "* * *
 {¶ 26} "(14) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect.
 {¶ 27} "* * *
 {¶ 28} "(16) Any other factor the court considers relevant." R.C. 2151.414(E).
 {¶ 29} Clear and convincing evidence is that proof which establishes in the mind of the trier of fact a firm conviction as to the allegations sought to be proved. Cross v. Ledford (1954), 161 Ohio St. 469. In determining the best interest of the child, R.C. 2151.414(D) directs that the court shall consider all relevant factors, including, but not limited to:
 {¶ 30} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child; *Page 12 
 {¶ 31} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 32} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 33} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 34} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 35} Appellant first asserts that the lower court erred in finding that LCCS made reasonable efforts to reunify her with Savannah. In support of this argument, appellant cites to the R.C. 2151.414(E)(1) factor quoted above and asserts that although appellee failed to provide her with case planning services, she nevertheless completed domestic violence and parenting classes on her own. She also asserts that she has distanced herself from Robert J., which was appellee's primary concern after Savannah's birth. In its judgment entry, however, the lower court did not make a finding under R.C. 2151.414(E)(1). Rather, the court supported its determination that Savannah could not or should not be returned to appellant's custody by finding that the factors under *Page 13 
R.C. 2151.414(E)(11), (14) and (16) had been proven by clear and convincing evidence. The court did, however, find:
 {¶ 36} "LCCS made reasonable efforts to reunify Savannah with the parents by providing repeated domestic violence counseling[,] individual counseling, parenting classes in the prior cases involving these parents together[,] case management services and a recommendation that they engage again [in] such treatment during the pendency of this case. The services were not successful because the mother was unwilling to substantially detach yourself [sic] from the father and the father has neglected to engage in any case plan services, either in the present case or the previous case involving Robert II."
 {¶ 37} This is the finding referenced by R.C. 2151.419(A)(1). There are two avenues by which an agency can obtain permanent custody of a child: (1) by requesting it in the abuse, neglect or dependency complaint under R.C. 2151.353 or (2) by filing a motion under R.C. 2151.413 after obtaining temporary custody. When a child services agency files a complaint for permanent custody pursuant to R.C. 2151.353, unless covered by the exceptions under R.C. 2151.419(A)(2), the trial court must determine whether the agency made reasonable efforts to prevent the removal or continued removal of the child from the home before granting permanent custody to the agency. See R.C. 2151.419(A)(1).
 {¶ 38} In this case, LCCS filed an original complaint for permanent custody pursuant to R.C. 2151.353(A)(4). Although the court subsequently proceeded under a *Page 14 
hybrid proceeding, granting LCCS legal custody after which LCCS filed a motion for permanent custody, we do find that the reasonable efforts statute, R.C. 2151.419, applies. Indeed, the trial court found that appellee made reasonable efforts to reunify Savannah with appellant. We must therefore determine if that finding was supported by the record.
 {¶ 39} A trial court's reasonable efforts finding must be supported by clear and convincing evidence. R.C. 2151.414(B). Thus, such findings will not be overturned as against the manifest weight of the evidence, if the record contains competent, credible evidence by which the court could have formed a firm belief or conviction that the essential statutory elements for a termination of parental rights have been established. In re Alyssa C, 153 Ohio App.3d 10, 2003-Ohio-2673, ¶ 13, citing to In re Forrest S. (1995), 102 Ohio App.3d 338, 345 andCross, supra, paragraph three of the syllabus.
 {¶ 40} In a reasonable efforts determination, the issue is not whether the agency could have done more, but whether it did enough to satisfy the reasonableness standard under the statute. In re Myers, 4th Dist. No. 02CA50, 2003-Ohio-2776, ¶ 18. A "reasonable effort" is an "honest, purposeful effort, free of malice and the design to defraud or to seek an unconscionable advantage." In re Weaver (1992), 79 Ohio App.3d 59,63.
 {¶ 41} The record in this case reveals that upon Savannah's birth, appellee had the same concerns regarding appellant and Robert J. as had existed in the case regarding appellant's other three children. Appellant and Robert J., however, refused to participate in case plan services, so none were offered. Nevertheless, appellee suggested that *Page 15 
appellant and Robert J. participate in services. Regarding Robert J., appellee suggested he participate in services to address substance abuse, domestic violence and parenting issues, and as for appellant, appellee encouraged her to participate in services to address domestic violence and parenting concerns. Appellant had twice before completed a parenting class involving her other three children. With regard to the present case, she started seeing a counselor in November 2007, and finally enrolled in a parenting class again in November or December 2007, completing that program in February 2008. Also, in January 2008, approximately one year after Savannah's birth, she reenrolled in a domestic violence program. Amy Rose, the LCCS ongoing caseworker assigned to both cases, kept in touch with appellant and her counselor and followed her progress. Nevertheless, Rose did not believe that appellant had learned from these programs.
 {¶ 42} Upon full consideration, we find that there was competent, credible evidence to support the trial court's determination that appellee made reasonable efforts to reunify appellant with Savannah. When appellant and Robert J. refused to cooperate, appellee was prevented from offering further services, see In the Matter of: EllaC, 6th Dist. No. L-04-1207, 2005-Ohio-42, and all appellee could do was make suggestions, offer encouragement and maintain contact. The first assignment of error is not well-taken.
 {¶ 43} In her second assignment of error, appellant asserts that the trial court's award of permanent custody was against the manifest weight of the evidence. The standard for granting permanent custody is set forth above. In the present case, the lower *Page 16 
court supported its conclusion that Savannah could not or should not be returned to appellant within a reasonable time by finding the existence of the factors set forth in R.C. 2151.414(E)(11), (14) and (16). That is, the court found that appellant has had her parental rights involuntarily terminated with respect to a sibling of Savannah; that appellant was unwilling to provide Savannah with food, clothing, shelter and other basic necessities due to her repeated unemployment and lack of stable housing; and that appellant continued to have contact with Robert J. despite a long history of domestic violence. The court only needed to find the existence of one of the R.C. 2151.414(E) factors to support its determination. We find that the record does support the court's findings.
 {¶ 44} With regard to the best interest prong, the lower court considered all of the relevant factors set forth in R.C. 2151.414(D). Upon review of the record, we conclude that the trial court's determination that permanent custody is in Savannah's best interest is supported by clear and convincing evidence. The second assignment of error is therefore not well-taken.
 {¶ 45} On consideration whereof, the court finds that substantial justice has been done the party complaining and the judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App. R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
 JUDGMENT AFFIRMED. *Page 17 
Mark L. Pietrykowski, P.J., Arlene Singer, J., Thomas J. Osowik, J., CONCUR.
[1] Robert J. has not appealed the award of permanent custody and we will not address the issues surrounding the court's termination of his parental rights. *Page 1