[Cite as *In re C.C*, 2016-Ohio-6981.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

IN RE:

    C.C.,                              CASE NO. 9-16-07

ADJUDICATED DEPENDENT CHILD.

                                   **O P I N I O N**

  [CHRISTOPHER COOPER - APPELLANT]

IN RE:

    I.C.,                               CASE NO. 9-16-08

ADJUDICATED DEPENDENT CHILD.

                                   **O P I N I O N**

  [CHRISTOPHER COOPER - APPELLANT]

**Appeals from Marion County Common Pleas Court,
Juvenile Division
Trial Court Nos. 13AB0082 and 13AB0083**

**Judgments Affirmed**

**Date of Decision:  September 26, 2016**

**APPEARANCES:**

    *Nathan D. Witkin* **for Appellant**

    *Justin J. Kahle* **for Appellee**

**PRESTON, J.**

{¶1} Appellant, Christopher Cooper ("Cooper"), appeals the January 25, 2016 judgment entries of the Marion County Court of Common Pleas, Juvenile Division, granting permanent custody of his children, C.C. and I.C., to appellee, the Marion County Children's Services Board (the "Agency"). For the reasons that follow, we affirm.

{¶2} C.C. and I.C. are the minor children of Cooper and Jodie Botkin ("Botkin"). (*See* Case No. 13AB0082, Doc. No. 42); (Case No. 13AB0083, Doc. No. 41). On May 13, 2013, the Agency filed motions "for ex parte/emergency orders with notice of hearing." (Case No. 13AB0082, Doc. No. 1); (Case No. 13AB0083, Doc. No. 1). That same day, the trial court held a shelter-care hearing and granted the Agency temporary custody of C.C. and I.C. (Case No. 13AB0082, Doc. Nos. 2, 3); (Case No. 13AB0083, Doc. Nos. 2, 3).

{¶3} After filing multiple complaints in 2013 and 2014 that the trial court dismissed, on the Agency's motion, under R.C. 2151.35, the Agency filed its most recent complaints on March 12, 2014. (Case No. 13AB0082, Doc. No. 42); (Case No. 13AB0083, Doc. No. 41). (*See also* Case No. 13AB0082, Doc. Nos. 4, 23, 34); (Case No. 13AB0083, Doc. Nos. 4, 23, 34). In its March 12, 2014 complaints, the Agency alleged that C.C. and I.C. are neglected and dependent children under R.C. 2151.03 and 2151.04, respectively, and requested that the trial court grant to the

Agency permanent custody of C.C. and I.C. or, alternatively, temporary custody and protective supervision of C.C. and I.C. (Case No. 13AB0082, Doc. No. 42); (Case No. 13AB0083, Doc. No. 41).

{¶4} On August 8, 2013, the trial court appointed counsel to represent Cooper. (Case No. 13AB0082, Doc. No. 21); (Case No. 13AB0083, Doc. No. 21).

{¶5} At multiple points since these cases commenced on May 13, 2013, the Agency submitted case plans to the trial court, which the trial court approved and incorporated into disposition entries. (*See* Case No. 13AB0082, Doc. Nos. 15, 44, 71, 143, 144); (Case No. 13AB0083, Doc. Nos. 15, 43, 70, 139, 140). The Agency also filed semiannual administrative reviews. (Case No. 13AB0082, Doc. Nos. 31, 51, 73, 84, 122); (Case No. 13AB0083, Doc. Nos. 31, 50, 71, 80, 118).

{¶6} On June 3, 2014, the trial court held an adjudicatory hearing as to Cooper.[1] (Case No. 13AB0082, Doc. No. 67); (Case No. 13AB0083, Doc. No. 65). On August 6, 2014, the trial court filed a judgment entry adjudicating C.C. and I.C. dependent as to Cooper. (*Id.*); (*Id.*).

{¶7} On April 6, 2015, the Agency filed motions for permanent custody of C.C. and I.C. (Case No. 13AB0082, Doc. No. 82); (Case No. 13AB0083, Doc. No. 78).

---

[1] C.C. and I.C. were adjudicated dependent as to Botkin at an earlier hearing. (*See* Case No. 13AB0082, Doc. No. 45); (Case No. 13AB0083, Doc. No. 44). The allegations of neglect were dismissed as to Botkin. (*See id.*); (*Id.*).

{¶8} On December 14, 2015, Cooper filed motions for legal custody of C.C. and I.C. (Case No. 13AB0082, Doc. No. 137); (Case No. 13AB0083, Doc. No. 133). The motions stated, "Although this motion is being filed at a later stage in the case, an order granting legal custody of the minor children to Mr. Cooper is in the best interests of said children." (*Id.*); (*Id.*).

{¶9} The trial court held a permanent-custody hearing on December 21, 2015. (Dec. 21, 2015 Tr. at 1).

{¶10} On January 15, 2016, Cooper filed in each case a "request for home-study and motion to stay." (Case No. 13AB0082, Doc. No. 141); (Case No. 13AB0083, Doc. No. 137). In those motions, he requested that the trial court "order [the Agency] to conduct a home-study of Mr. Cooper's mother, Dorothy Abner, for possible placement of the minor children." (*Id.*); (*Id.*).

{¶11} On January 25, 2016, the trial court filed judgment entries denying Cooper's motions for a home study and granting the Agency permanent custody of C.C. and I.C. (Case No. 13AB0082, Doc. No. 142); (Case No. 13AB0083, Doc. No. 138).

{¶12} On February 24, 2016, Cooper filed notices of appeal. (Case No. 13AB0082, Doc. No. 145); (Case No. 13AB0083, Doc. No. 141). He raises five assignments of error for our review. We will address Cooper's first, second, third, and fourth assignments of error together, followed by his fifth assignment of error.

-4-

**Assignment of Error No. I**

**The case plans in this matter did not meet the requirements of R.C. 2151.412 because they excluded appellant as biological father of the minor children herein.**

**Assignment of Error No. II**

**Marion County Children Services did not have the authority to file a motion for permanent custody under R.C. 2151.413(D)(3)(B) and the trial court committed plain error by granting the motion.**

**Assignment of Error No. III**

**The trial court abused its discretion in this matter by finding that Marion County Children Services made reasonable efforts to reunify the family in this matter.**

**Assignment of Error No. IV**

**The case plans in this matter did not follow the general goals and priorities of R.C. 2151.412(H).**

{¶13} In his first assignment of error, Cooper argues that, by not including him in the case plans for C.C. and I.C., the Agency failed to satisfy the requirements of R.C. 2151.412 and Ohio Adm.Code 5101:2-38-05. In his second assignment of error, Cooper argues, "Because the Agency did not even extend a case plan to Appellant/Father, R.C. §2151.413(D)(3)(b) precludes the Agency from filing a motion for permanent custody. The granting of this defective motion was, therefore, plain error committed by the trial court." (Appellant's Brief at 6-7). In his third assignment of error, Cooper argues that the Agency "did not make reasonable efforts to reunify the minor children with [Cooper]" because the Agency did not include

him in the case plan and otherwise failed to take "any actions that would qualify as 'reasonable efforts' under R.C. §2151.419." (Appellant's Brief at 7, 10). In his fourth assignment of error, Cooper argues that the Agency failed to attempt to find family-placement options before attempting foster care, contrary to the requirements of R.C. 2151.412(H).

{¶14} R.C. 2151.419 imposes a duty on the part of children services agencies to make reasonable efforts "'to prevent the removal of the child from the child's home, to eliminate the continued removal of the child from the child's home, or to make it possible for the child to return safely home.'" *In re B.P.*, 3d Dist. Logan No. 8-15-07, 2015-Ohio-5445, ¶ 39, quoting R.C. 2151.419(A)(1). "[T]he agency bears the burden of showing that it made reasonable efforts." *In re T.S.*, 3d Dist. Mercer Nos. 10-14-13, 10-14-14, and 10-14-15, 2015-Ohio-1184, ¶ 26, citing R.C. 2151.419(A)(1). "We review under an abuse-of-discretion standard a trial court's finding that an agency made reasonable efforts toward reunification." *In re A.M.*, 3d Dist. Marion No. 9-14-46, 2015-Ohio-2740, ¶ 24, citing *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, ¶ 48 and *In re Sherman*, 3d Dist. Hancock Nos. 5-06-21, 5-06-22, and 5-06-23, 2006-Ohio-6485, ¶ 11. An abuse of discretion suggests that the trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

**{¶15}** "'Case plans are the tools that child protective service agencies use to facilitate the reunification of families who * * * have been temporarily separated.'" *In re T.S.* at ¶ 26, quoting *In re Evans*, 3d Dist. Allen No. 1-01-75, 2001 WL 1333979, *3 (Oct. 30, 2001). R.C. 2151.412 governs a children services agency's use of case plans and provides, in relevant part:

> (A)  Each public children services agency and private child placing agency shall prepare and maintain a case plan for any child to whom the agency is providing services and to whom any of the following applies:
>
> (1)  The agency filed a complaint pursuant to section 2151.27 of the Revised Code alleging that the child is an abused, neglected, or dependent child;
>
> (2)  The agency has temporary or permanent custody of the child;
>
> (3)  The child is living at home subject to an order for protective supervision;
>
> (4)  The child is in a planned permanent living arrangement.

R.C. 2151.412(A). Ohio Adm.Code 5101:2-38-05 sets forth specific case-plan requirements of a public children services agency concerning children in its custody or under its protective supervision. *See In re A.P.*, 9th Dist. Medina No. 12CA0022-M, 2012-Ohio-3873, ¶ 32. Those regulations require that an agency, if it initiates

the case-planning process, provide verbal or written notification to certain parties, including the child's parents, and "[w]ork with all parties on the development, implementation, and review of the case plan." Ohio Adm.Code 5101:2-38-05(B)(1), (2) (2010) and Ohio Adm.Code 5101:2-38-05(E)(1), (2) (2014) (current version at Ohio Adm.Code 5101:2-38-05(G)(1), (2) (2016)). *See also In re A.P.* at ¶ 32.

{¶16} "Agencies have an affirmative duty to diligently pursue efforts to achieve the goals in the case plan." *In re T.S.* at ¶ 27, citing *In re Evans* at *3. "'Nevertheless, the issue is not whether there was anything more that [the agency] could have done, but whether the [agency's] case planning and efforts were reasonable and diligent under the circumstances of this case.'" *Id.*, quoting *In re Leveck*, 3d Dist. Hancock Nos. 5-02-52, 5-02-53, and 5-02-54, 2003-Ohio-1269, ¶ 10. "'"Reasonable efforts" does not mean all available efforts. Otherwise, there would always be an argument that one more additional service, no matter how remote, may have made reunification possible.'" *In re H.M.K.*, 3d Dist. Wyandot Nos. 16-12-15 and 16-12-16, 2013-Ohio-4317, ¶ 95, quoting *In re M.A.P.*, 12th Dist. Butler Nos. CA2012-08-164 and CA2012-08-165, 2013-Ohio-655, ¶ 47. "We also note that the statute provides that in determining whether reasonable efforts were made, the child's health and safety is paramount." *In re T.S.* at ¶ 27, citing R.C. 2151.419(A)(1).

R.C. 2151.413(D)(3)(b) provides:

An agency shall not file a motion for permanent custody under division (D)(1) or (2) of this section if any of the following apply:

* * *

(b)   If reasonable efforts to return the child to the child's home are required under section 2151.419 of the Revised Code, the agency has not provided the services required by the case plan to the parents of the child or the child to ensure the safe return of the child to the child's home.

R.C. 2151.413(D)(3)(b).  "[T]he inquiry under R.C. 2151.413(D)(3)(b) is whether the agency provided the services *specified* in the case plan."  (Emphasis sic.)  *In re J.H.*, 12th Dist. Clinton No. CA2015-07-014, 2016-Ohio-640, ¶ 34.

{¶17} R.C. 2151.412(H) sets forth "general priorities" by which an agency "shall" be guided in developing a case plan.  *See In re A.J.*, 5th Dist. Licking No. 14-CA-35, 2014-Ohio-3755, ¶ 20-21.  The portion of R.C. 2151.412(H) relevant to Cooper's argument addresses who "should" have custody of a child:

(H)  In the agency's development of a case plan and the court's review of the case plan, the child's health and safety shall be the paramount concern.  The agency and the court shall be guided by the following general priorities:

(1)  A child who is residing with or can be placed with the child's parents within a reasonable time should remain in their legal custody even if an order of protective supervision is required for a reasonable period of time;

(2)  If both parents of the child have abandoned the child, have relinquished custody of the child, have become incapable of supporting or caring for the child even with reasonable assistance, or have a detrimental effect on the health, safety, and best interest of the child, the child should be placed in the legal custody of a suitable member of the child's extended family;

(3)  If a child described in division (H)(2) of this section has no suitable member of the child's extended family to accept legal custody, the child should be placed in the legal custody of a suitable nonrelative who shall be made a party to the proceedings after being given legal custody of the child;

(4)  If the child has no suitable member of the child's extended family to accept legal custody of the child and no suitable nonrelative is available to accept legal custody of the child and, if the child temporarily cannot or should not be placed with the child's parents, guardian, or custodian, the child should be placed in the temporary

custody of a public children services agency or a private child placing

agency * * *.

R.C. 2151.412(H)(1), (2), (3), (4). Ohio courts have consistently recognized that

the language of R.C. 2151.412(H) is precatory, not mandatory. *In re A.J.*, 5th Dist.

Licking No. 14-CA-35, 2014-Ohio-3755, ¶ 21, quoting *In re M.H.*, 4th Dist. Vinton

No. 11 CA683, 2011-Ohio-5140, ¶ 44-45.

{¶18} We will now address Cooper's assignments of error in the following

order: first, third, second, and fourth. We begin by addressing Cooper's argument,

under his first assignment of error, that the Agency failed to satisfy its case-plan

obligations under R.C. 2151.412 and Ohio Adm.Code 5101:2-38-05. We reject this

argument. The record reveals that Cooper was represented by counsel beginning in

August 2013, less than three months after the Agency filed the original complaints.

(*See* Case No. 13AB0082, Doc. No. 21); (Case No. 13AB0083, Doc. No. 21).

Nevertheless, Cooper did not object to his being excluded from the case plan, and

he did not otherwise express to the trial court a desire to be included in the case plan.

*See In re N.M.*, 9th Dist. Summit No. 27400, 2014-Ohio-4783, ¶ 29 ("We note that

both parents were represented by counsel and during the course of the proceedings,

neither counsel argued that the failure to sign the case plans was substantively

prejudicial to either parent."). Therefore, Cooper waived this issue for purposes of

appeal. *In re C.B.C.*, 4th Dist. Lawrence No. 15CA18, 2016-Ohio-916, ¶ 87 ("[T]he

trial court adopted the case plan as part of its dispositional order. Yet the father did not raise any of these objections before the trial court at a time when it could have corrected any error. Consequently, he has forfeited them for purposes of appeal."). *See also In re S.B.*, 7th Dist. Harrison No. 13 HA 3, 2013-Ohio-5870, ¶ 26 ("An appellate court will not consider any error which could have called to the trial court's attention at a time when such error could have been corrected or avoided by the trial court.").

{¶19} Even were we to address the merits of Cooper's argument, we would reject it because Cooper ignores the efforts the Agency undertook to contact him and include him in case planning. He suggests that the Agency's decision not to include him in the case plan was based purely on his being incarcerated. This suggestion is belied by the record. The case plans reference Cooper's incarceration in Kentucky. (*See* Case No. 13AB0082, Doc. Nos. 15, 44, 71); (Case No. 13AB0083, Doc. Nos. 15, 43, 70). The semiannual administrative reviews elaborate on the efforts of the Agency to communicate with Cooper and potential kinship placements. (*See* Case No. 13AB0082, Doc. Nos. 31, 51, 73, 84, 122); (Case Nos. 13AB0083, Doc. Nos. 31, 50, 71, 80, 118). The semiannual administrative review filed on November 4, 2013 provides:

> The father of [C.C.] and [I.C.] lives in Kentucky. He got out of jail in
>
> July after serving 22 months for burglary charges. His name is

Christopher Cooper and he is not eligible to have the children based on his previous history. * * * The agency has sent out kinship letters to Kentucky for [C.C.] and [I.C.] to their father's kin. The [Interstate Compact on the Placement of Children ("ICPC")] packet was sent in September. The agency is waiting to hear from Kentucky regarding the ICPC results. There is no available kin in Ohio.

(Case No. 13AB0082, Doc. No. 31 at 5); (Case No. 13AB0083, Doc. No. 31 at 5). The semiannual administrative review filed on May 2, 2014 provides:

The agency has completed ICPC with kin in Kentucky. The ICPC placement was denied. No other kin have been identified at this time. * * *

Please note that ICPC kinship placement options were explored as an optional plan for the boys for reunification—however, the agency has received verbal denial of the relative ICPC for Kentucky. The father of [C.C.] and [I.C.], Christopher Cooper, lives in Kentucky. He got out of jail in July 2013 after serving 22 months for burglary charges. He has not expressed interest in placement and his previous history is of concern. Father, Christopher Cooper, does not have a relationship with the children. He was sent a letter by certified mail asking for a

response by January 31, 2014 to be added to the case plan and a response was not received by the agency.

(Case No. 13AB0082, Doc. No. 51 at 5-6); (Case No. 13AB0083, Doc. No. 50 at 5-6). The semiannual administrative review filed on October 31, 2014 reflects that Cooper contacted the Agency once in June 2014:

The boys' father, Christopher Cooper, was recently released, but was re-arrested. He had not expressed interest in placement until late June when he was again released. At that time he said he was visiting relatives in Florida and hopes to move to Marion and to seek custody at that time. There has been no recent contact with/from him.

* * *

[Cooper] had not expressed an interest in placement until June 26 when he called to say he will move to Marion and seek custody at that time. His previous history is of concern. Father, Christopher Cooper, does not have a relationship with the children.

(Case No. 13AB0082, Doc. No. 73 at 6-7); (Case No. 13AB0083, Doc. No. 71 at 6-7). The semiannual administrative review filed on May 1, 2015 documents the Agency's ongoing efforts to identify a kinship placement: "Agency continues to request Kinship options. When Kinship options come available caseworker checks background and may complete a homestudy if preliminary background check is

OK." (Case No. 13AB0082, Doc. No. 84 at 5); (Case No. 13AB0083, Doc. No. 80 at 5). The semiannual administrative review filed on October 19, 2015 reflects that Cooper did not communicate with the Agency since the summer of 2014:

> The boys' father, Christopher Cooper, is in and out of trouble with law enforcement. He had not expressed interest in placement until late June 2014 when he was again released. At that time he said he was visiting relatives in Florida and hopes to move to Marion and seek custody at that time. The agency has received no recent contact with/from him since Summer 2014.

(Case No. 13AB0082, Doc. No. 122 at 6); (Case No. 13AB0083, Doc. No. 118 at 6).

{¶20} In addition to these semiannual administrative reviews, which the Agency filed with the trial court, the ongoing caseworker for the Agency, Corina Pryor ("Pryor"), testified to the Agency's limited success in communicating with Cooper. (*See* Dec. 21, 2015 Tr. at 71-76). The Agency mailed letters and documents to the address it had on file for Cooper, and that correspondence was not returned. (*Id.* at 112-114, 116-117). According to Pryor, she last heard from Cooper in June 2014, when he came to the Agency in person after a court hearing. (*Id.* at 71, 80, 86, 108). When asked about the content of that meeting, Pryor testified, "It was more of he wasn't going to be appropriate to have the children and he had like

-15-

family. So names of family, addresses, things * * * of that nature." (*Id.* at 71). At the meeting, Cooper gave Pryor names of family members for possible kinship placement. (*Id.* at 107). Before that meeting in June 2014, Pryor did not have contact with Cooper. (*Id.* at 86).

{¶21} The Agency looked into the potential kinship placements suggested by Cooper, but none proved to be viable options. (*Id.* at 71-74, 107-110). This included exploration of ICPC kinship placement options in Kentucky; however, those requests were denied.[2] (*Id.* at 72-73). The Agency also explored placement with Cooper's mother and stepfather; however, according to Pryor, the Agency determined that placement to be inappropriate because "the fingerprints came back inappropriate * * * on some criminal history that was on 'em." (*Id.* at 73-74). The Agency sent letters to three other potential kinship placements that were suggested to the Agency, but the Agency did not hear back from them. (*Id.* at 74, 109).

{¶22} Pryor testified that Cooper did not make any attempts to contact or visit C.C. and I.C., which would have had to have occurred through the Agency. (*Id.* at 74). When asked if Cooper ever indicated that he wanted to be included in the case plan, Pryor testified, "I mean, at one point, you know, he thought that he would maybe try to come up here and work the Case Plan." (*Id.* at 75).

---

[2] In describing ICPC, Pryor testified, "It's asking that State and then the jurisdiction of whichever agency's over that area to go do an investigation and check out the family." (Dec. 21, 2015 Tr. at 73).

Nevertheless, to Pryor's knowledge, at no point did Cooper suggest that he wanted to be included in the case plan. (*Id.* at 87, 114).

**{¶23}** Based on this record, we reject Cooper's argument, under his first assignment of error, that the Agency failed to satisfy its case-plan obligations under R.C. 2151.412 and Ohio Adm.Code 5101:2-38-05. The Agency prepared and maintained a case plan as required by R.C. 2151.412. The Agency notified Cooper when it initiated the case-planning process, as required by Ohio Adm.Code 5101:2-38-05. The Agency also pursued, albeit without success, the kinship placements suggested by Cooper, including Cooper's mother as suggested in Cooper's January 15, 2016 "request[s] for home-study and motion[s] to stay." Accordingly, the Agency satisfied its statutory and regulatory obligations. *See In re N.M.*, 2014-Ohio-4783, at ¶ 29-31; *In re Borders*, 12th Dist. Brown No. CA2001-10-017, 2002-Ohio-2578, ¶ 9-13; *In re Perry*, 4th Dist. Vinton No. 06CA648, 2006-Ohio-6128, ¶ 53-56.

**{¶24}** Furthermore, the version of the rule on which Cooper relies, Ohio Adm.Code 5101:2-38-05, that was in effect at the time these cases were pending in the trial court indicates that a child's parent bears the "responsibility to work with the agency in jointly developing, implementing, and reviewing the case plan." Ohio Adm.Code 5101:2-38-05(B)(1) (2010) and Ohio Adm.Code 5101:2-38-05(E)(1) (2014). The record reflects that Cooper failed to satisfy his responsibility to work

with the Agency. *See In re N.M.* at ¶ 29-31; *In re Borders* at ¶ 9-13; *In re Perry* at ¶ 53-56. In fact, aside from the motion for legal custody that Cooper filed in each case the week before the permanent-custody hearing, and aside from his contesting the Agency's permanent-custody motion, the record reveals that the Agency, Cooper's counsel, and Cooper himself did not believe that Cooper could serve as a suitable placement option for the children. Even as late as the January 21, 2016 hearing, Cooper's counsel conceded, "Obviously, he's acknowledged – he – he's in no position to take [the children] but he believes his mother is in a position." (Jan. 21, 2016 Tr. at 4).

{¶25} Cooper relies heavily on *In re S.R.*; however, that case is distinguishable. 9th Dist. Summit No. 27209, 2014-Ohio-2749. In *In re S.R.*, "Father's name is not included on any of the case plans in this case, and no written explanation is given for his failure to sign in agreement or participate in the planning process." *Id.* at ¶ 44. In these cases, Cooper's name is included in the case plans, and written explanations appear in the records concerning Cooper's failure to sign in agreement or participate in the case-planning process. In *In re S.R.*, "Father contacted the intake caseworker via telephone within days of receiving the complaint, he had continual telephone conversations with the intake and ongoing caseworkers during the pendency of this case, and he expressed his desire to have S.R. live with him." *Id.* at ¶ 8. In these cases, despite its efforts, the Agency had

limited success in communicating with Cooper, and when there was communication, any interest Cooper expressed in seeking custody was contingent on his moving to Marion. In *In re S.R.*, "CSB and Father went back and forth disagreeing about the need for Father to submit to DNA testing [to confirm paternity] for a period of at least 16 months," during which "Father was never included on S.R.'s case plan and CSB offered no reunification services to him or any members of his family." *Id.* at ¶ 29. In these cases, Cooper—not the children's birth certificates—was the only impediment to his being included in the case-planning process. Moreover, unlike in *In re S.R.*, the Agency looked into Cooper's suggested kinship placements. In *In re S.R.*, "Father * * * was not represented by counsel." *Id.* at ¶ 12. Here, the Agency initiated the cases in May 2013, and Cooper has been represented by counsel from September 2013 to the present. In *In re S.R.*, the caseworker "misled the magistrate about CSB's ability to locate Father." *Id.* at ¶ 8. In these cases, the Agency did not mislead the trial court. For all of these reasons, *In re S.R.* is distinguishable, and we reject the argument Cooper makes under his first assignment of error.

{¶26} The arguments Cooper makes under his second and third assignments of error are related in part to the one he makes under his first assignment of error. We reject Cooper's argument, under his third assignment of error, that the Agency "did not make reasonable efforts to reunify the minor children with [Cooper]"

because the Agency did not include him in the case plan and otherwise failed to take "any actions that would qualify as 'reasonable efforts' under R.C. §2151.419." (Appellant's Brief at 7, 10). Based on our discussion above, we reject Cooper's contention that the Agency failed to make reasonable efforts because it did not include him in the case plan. We also reject his argument that the Agency otherwise failed to make reasonable efforts toward reunifying the children with Cooper. The Agency attempted to communicate with Cooper; however, aside from saying that he might want to be included in the case plan if he moved back to Marion, Cooper did not indicate that he wanted to be included in the case plan. The Agency investigated potential kinship placements suggested by Cooper. We conclude that the trial court did not abuse its discretion in concluding that the Agency's efforts toward reunification were reasonable and diligent under the circumstances of these cases. *See In re C.B.C.*, 4th Dist. Lawrence No. 15CA18, 2016-Ohio-916, ¶ 77, citing *In re Billingsley*, 3d Dist. Putnam No. 12-02-07, 2003-Ohio-344, ¶ 24; *In re Savannah J.*, 6th Dist. Lucas No. L-08-1123, 2008-Ohio-5217, ¶ 41-42.

{¶27} Next, we reject Cooper's argument, under his second assignment of error, that R.C. 2151.413(D)(3)(b) precluded the Agency from filing motions for permanent custody "[b]ecause the Agency did not even extend a case plan to [Cooper]." (Appellant's Brief at 6-7). As we discussed above, R.C. 2151.413(D)(3)(b) precludes an agency from filing a permanent-custody motion if

reasonable efforts are required under R.C. 2151.419 *and if* the agency has not provided the services required by the case plan. Based on our rejection above of Cooper's arguments that the Agency failed to satisfy its case-planning obligations and failed to make reasonable efforts toward reunification, we reject Cooper's argument that the Agency was required under R.C. 2151.413(D)(3)(b) to include Cooper in the case plan before it could file a motion for permanent custody. Moreover, to the extent Cooper argues that R.C. 2151.413(D)(3)(b) precluded the Agency from filing a motion for permanent custody because it failed to make reasonable efforts under R.C. 2151.419, we reject Cooper's argument. *See In re J.H.*, 2016-Ohio-640, at ¶ 34 ("R.C. 2151.413(D)(3)(b) provides that if a '12 of 22' case would otherwise require the agency to undertake reasonable efforts pursuant to R.C. 2151.419, then the filing of the permanent custody motion is precluded *unless* the agency has '*provided the services required by the case plan* to the parents of the child or the child to ensure the safe return of the child to the child's home.'") (Emphasis sic.)).

{¶28} Finally, we reject Cooper's argument, under his fourth assignment of error, that the Agency failed to attempt to find family-placement options before attempting foster care, contrary to the requirements of R.C. 2151.412(H). Even assuming without deciding that Cooper can rely on the precatory R.C. 2151.412(H) in the manner he does, we conclude that the record reflects that the Agency

-21-

attempted to locate suitable kinship placements. Contrary to Cooper's argument, those efforts are documented in the written records of these cases, and the caseworker testified at the permanent-custody hearing concerning the Agency's exhaustive efforts in attempting to identify suitable kinship placements. Therefore, we reject the argument Cooper makes under his fourth assignment of error. *See In re A.J.*, 5th Dist. Licking No. 14-CA-35, 2014-Ohio-3755, ¶ 23-24 ("The record in this case shows that [the agency] made reasonable efforts to place the children with a suitable relative but its investigation revealed there was no relative suitable for placement.").

{¶29} Cooper's first, second, third, and fourth assignments of error are overruled.

**Assignment of Error No. V**

**The trial court abused its discretion by finding that Marion County Children Services satisfied both prongs of the permanent custody test by clear and convincing evidence.**

{¶30} In his fifth assignment of error, Cooper argues that the trial court abused its discretion in finding that the Agency satisfied R.C. 2151.414. Specifically, Cooper argues that the trial court erred in relying on R.C. 2151.414(E)(4) to conclude under R.C. 2151.414(B)(1)(a) that C.C. and I.C. cannot be placed with a parent within a reasonable period of time. Cooper also argues, "[T]he reasoning in *In re S.R.* indicates that a parent cannot be faulted for being

absent twelve (12) out of twenty-two (22) months when he was not on the case plan during those twenty-two (22) months." (Appellant's Brief at 15, citing *In re S.R.*, 2014-Ohio-2749, at ¶ 49).

{¶31} When considering a motion for permanent custody of a child, the trial court must comply with the statutory requirements set forth in R.C. 2151.414. *See In re C.E.*, 3d Dist. Hancock Nos. 5-09-02 and 5-09-03, 2009-Ohio-6027, ¶ 14. R.C. 2151.414(B)(1) provides, in relevant part, that a trial court

> may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
>
> (a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, * * * and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
>
> * * *

> (d)   The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *.

R.C. 2151.414(B)(1)(a), (d).  Specifically concerning R.C. 2151.414(B)(1)(a), "[i]f one or more of the factors enumerated in R.C. 2151.414(E) is found to be present by clear and convincing evidence, the trial court shall find that the child cannot be placed with the parents within a reasonable period of time or should not be placed with the parents."  *In re A.F.*, 3d Dist. Marion No. 9-11-27, 2012-Ohio-1137, ¶ 54, citing *In re Goodwin*, 3d Dist. Shelby No. 17-08-12, 2008-Ohio-5399, ¶ 23.

{¶32} "[T]he findings under R.C. 2151.414(B)(1)(a) and R.C. 2151.414(B)(1)(d) are alternative findings, [and] each is independently sufficient to use as a basis to grant the Agency's motion for permanent custody."  *In re M.R.*, 3d Dist. Defiance No. 4-12-18, 2013-Ohio-1302, ¶ 80.  Under the plain language of R.C. 2151.414(B)(1)(d), when a child has been in an agency's temporary custody for 12 or more months of a consecutive 22-month period, a trial court need not find that the child cannot be placed with either parent within a reasonable time or should not be placed with the parents.  *In re A.M.*, 2015-Ohio-2740, at ¶ 14, citing *In re I.G.*, 3d Dist. Marion Nos. 9-13-43, 9-13-44, and 9-13-45, 2014-Ohio-1136, ¶ 30, citing R.C. 2151.414(B)(1)(d).

**{¶33}** "If the trial court determines that *any* provision enumerated in R.C. 2151.414(B)(1) applies, the trial court must determine, by clear and convincing evidence, whether granting the agency permanent custody of the child is in the child's best interest." (Emphasis sic.) *In re A.F.* at ¶ 55, citing *In re D.M.*, 3d Dist. Hancock Nos. 5-09-12, 5-09-13, and 5-09-14, 2009-Ohio-4112, ¶ 33 and *In re K.H.*, 3d Dist. Hancock No. 5-10-06, 2010-Ohio-3801, ¶ 30. In determining whether granting the agency permanent custody is in the best interest of the child, R.C. 2151.414(D)(1) provides:

> [T]he court shall consider all relevant factors, including, but not limited to, the following:
>
> (a)   The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
> (b)   The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
>
> (c)   The custodial history of the child, including whether the child has been in the temporary custody of one or more public children

services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *;

(d)  The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e)  Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

R.C. 2151.414(D)(1)(a)-(e).

**{¶34}** "Clear and convincing evidence is more than a preponderance of the evidence but not as much evidence as required to establish guilt beyond a reasonable doubt as in a criminal case; rather, it is evidence which provides the trier of fact with a firm belief or conviction as to the facts sought to be established." *In re H.M.K.*, 2013-Ohio-4317, at ¶ 42, citing *In re Meyer*, 98 Ohio App.3d 189, 195 (3d Dist.1994), citing *Cincinnati Bar Assn. v. Massengale*, 58 Ohio St.3d 121, 122 (1991). "Upon review, an appellate court 'must examine the record and determine if the trier of fact had sufficient evidence before it to satisfy this burden of proof.'" *Id.* at ¶ 43, quoting *In re Meyer* at 195, citing *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368 (1985). "A reviewing court will not reverse a trial court's determination unless it is not supported by clear and convincing evidence." *Id.*, citing *In re Meyer* at 195, citing *In re Adoption of Holcomb* at 368 and *In re Adoption*

*of Lay*, 25 Ohio St.3d 41, 42 (1986). *See also In re A.E.*, 3d Dist. Seneca Nos. 13-14-14 and 13-14-15, 2014-Ohio-4540, ¶ 28 ("A court's decision to terminate parental rights will not be overturned as against the manifest weight of the evidence if the record contains competent, credible evidence by which a court can determine by clear and convincing evidence that the essential statutory elements for a termination of parental rights have been established."), citing *In re B.G.W.*, 10th Dist. Franklin No. 08AP-081, 2008-Ohio-3693 and *In re Nevaeh J.*, 6th Dist. Lucas No. L-06-1093, 2006-Ohio-6628, ¶ 17.

**{¶35}** In this case, although the findings under R.C. 2151.414(B)(1)(a) and R.C. 2151.414(B)(1)(d) are alternative findings, the trial court found both that C.C. and I.C. cannot be placed with a parent within a reasonable period of time *and* that C.C. and I.C. have been in the temporary custody the Agency for twelve or more months of a consecutive twenty-two-month period. Cooper offers arguments as to why each finding is erroneous. As we will explain below, we hold that clear and convincing evidence supports the trial court's determination that C.C. and I.C. have been in the temporary custody the Agency for twelve or more months of a consecutive twenty-two-month period, thereby satisfying R.C. 2151.414(B)(1)(d). Based on that conclusion, we need not address Cooper's arguments concerning the trial court's alternative finding under R.C. 2151.414(B)(1)(a). *See In re A.M.*, 2015-Ohio-2740, at ¶ 17.

{¶36} Regarding R.C. 2151.414(B)(1)(d), C.C. and I.C. have been in the temporary custody of the Agency since May 10, 2013, including on the date the Agency filed its motions for permanent custody—April 8, 2015. Cooper's argument is that time during which he was not included in the case plan should not be included in the "12 of 22" calculation. In making that argument, Cooper relies exclusively on *In re S.R.* In that case, the Ninth District Court of Appeals concluded, "The trial court had no authority to make a '12 of 22' finding under the facts of this case because Father was not provided with *any* reasonable reunification efforts." (Emphasis sic.). *In re S.R.*, 2014-Ohio-2749, at ¶ 47, 49. We reject Cooper's reliance on *In re S.R.* for two reasons. First, as we discussed in detail above, the case is distinguishable from these cases. Second, we concluded above that the Agency satisfied its obligation to make reasonable reunification efforts. Accordingly, we conclude that the trial court had sufficient evidence before it to conclude by clear and convincing evidence that the children were in the Agency's temporary custody for 12 or more months of a consecutive 22-month period.

{¶37} Finally, Cooper offers no argument concerning the trial court's determination that granting permanent custody of C.C. and I.C. to the Agency is in the children's best interests. Therefore, we will not address that prong of the R.C. 2151.414 inquiry. *See In re A.C.*, 9th Dist. Summit No. 23627, 2007-Ohio-5525, ¶ 14.

{¶38} Cooper's fifth assignment of error is overruled.

{¶39} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgments of the trial court.

***Judgments Affirmed***

**SHAW, P.J. and WILLAMOWSKI, J., concur.**

**/jlr**