[Cite as *In re A.P.*, 2012-Ohio-3873.]

STATE OF OHIO           )                   IN THE COURT OF APPEALS
                               )ss:               NINTH JUDICIAL DISTRICT
COUNTY OF MEDINA    )

IN RE: A.P.                                   C.A. No.      12CA0022-M

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF MEDINA, OHIO
CASE No.     2010 06 DE 0023

DECISION AND JOURNAL ENTRY

Dated: August 27, 2012

DICKINSON, Judge.

INTRODUCTION

{¶1} This appeal involves the permanent custody of a minor who had been removed from the legal custody of her maternal grandmother and adjudicated a dependent child. Although Medina County Job and Family Services filed initial case plans that had the goal of returning the child to the grandmother's home, the juvenile court later ordered that the grandmother be removed from the case plan. The juvenile court reasoned that the grandmother was not a suitable relative to provide a home for the child and that she lost her status as the child's legal custodian when it placed the child in the temporary custody of Job and Family Services. Because there were no other suitable relatives to provide the child with a permanent home, Job and Family Services moved for, and was granted, permanent custody. The grandmother appealed, arguing that the juvenile court's removal of her from the child's case plan violated her constitutional and statutory rights as the child's legal custodian. She has further

argued that the juvenile court incorrectly decided to place the child in the permanent custody of Job and Family Services. This Court reverses the juvenile court's judgment because, as the child's custodian, the grandmother had statutory rights to be included in the child's case plan and to continue working toward reunification with the child.

## BACKGROUND

{¶2} In a prior dependency case, the juvenile court removed the minor child, A.P., from the custody of her mother and later adjudicated her a dependent child. Although the facts of that case are not part of the record, it is not disputed that A.P. lived in a foster home for several months and was not reunified with her mother. In November 2009, the juvenile court placed A.P. in the legal custody of her maternal grandmother. The juvenile court initially ordered protective supervision by Job and Family Services, but terminated protective supervision and closed the case the following month.

{¶3} This case began in June 2010, when Job and Family Services filed a dependency complaint, alleging that the grandmother had left A.P. in the care of her mother, who was not a suitable caregiver and was living in an inappropriate environment. By stipulation of the grandmother and the mother, A.P. was adjudicated a dependent child under Section 2151.04(C) of the Ohio Revised Code, which defines a dependent child as any child "[w]hose condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship[.]" The juvenile court allowed A.P. to remain in the grandmother's custody under an order of protective supervision. One month later, however, A.P. was removed from the grandmother's home and placed in the temporary custody of Job and Family Services because the grandmother violated the agreed order of protective supervision by again leaving A.P. in the care of her mother.

{¶4} For several months after A.P. was removed from the grandmother's home, Job and Family Services developed and maintained a case plan that focused on returning A.P. to the home of the grandmother, her legal custodian. The case plan noted as family "strengths" that A.P. was "very attached to [the grandmother] and ha[d] adjusted to living in her home very well." The "strengths" further emphasized that the grandmother was "very bonded and committed to [A.P.]" The case plan goals for the grandmother focused primarily on her need to develop an understanding of how to protect A.P. from inappropriate adults. To accomplish that goal, the grandmother and A.P. each began individual counseling. The grandmother later began joint counseling sessions with A.P. and the child's individual therapist. The grandmother was also required to complete drug treatment and submit to random, weekly drug screens to address her admitted use of marijuana and alcohol. She completed drug and alcohol treatment and consistently submitted negative drug screens throughout this case.

{¶5} On October 27, 2010, given the grandmother's progress on the case plan, Job and Family Services proposed an amendment to the case plan to allow visits away from the agency that would be supervised by the maternal great-grandmother, rather than Job and Family Services. The grandmother later moved the juvenile court to return A.P. to her legal custody or, alternatively, to grant her increased visitation.

{¶6} The guardian ad litem, however, filed an objection to the amendment proposed by Job and Family Services and further requested that the juvenile court remove the grandmother from the case plan. The primary concern alleged by the guardian was the grandmother's involvement with a man named Richard. After A.P. mentioned "Richard" to the foster parents as the grandmother's friend with whom she had also spent time, they discovered through internet research that he was a convicted sex offender. The foster parents were unable to convince Job

and Family Services that the grandmother's involvement with Richard was a reason to stop reunification efforts. Therefore, they contacted the guardian ad litem and apparently were able to convince her that the grandmother's involvement with Richard was a reason to remove her from the case plan, and she moved the juvenile court accordingly. The foster parents' lawyer later entered a notice of intention to present evidence at the hearing to support removing the grandmother from the case plan.

{¶7} The juvenile court held a hearing on the proposed case plan amendments filed by Job and Family Services, the grandmother, and the guardian ad litem. During the hearing, however, Job and Family Services withdrew its request to amend the case plan. Consequently, the hearing focused on whether the grandmother should have increased visitation with A.P., have A.P. returned to her custody, or be removed from the case plan. The guardian ad litem presented evidence that focused on the primary reason that A.P. had been removed from the grandmother's custody and adjudicated a dependent child in this case: the grandmother's failure to protect A.P. from inappropriate people. Specifically, the guardian focused on the grandmother's relationship with Richard and the fact that she had allowed A.P. to spend time with him. Job and Family Services had been aware of the grandmother's past involvement with Richard but, prior to the hearing, believed that the grandmother had ended the relationship because she told her caseworker that she had.

{¶8} No evidence was presented to explain the details of Richard's sex offense, but none of the parties disputed that he was a convicted sex offender and an inappropriate adult to have contact with A.P. Although not made clear in the juvenile court, the evidence also established that any contact between Richard and A.P. predated the child's removal from the grandmother's home. At the time of the hearing, the threat posed by Richard was that the

grandmother might again allow A.P. to spend time with him if the juvenile court returned her to the grandmother's home or expanded visitation to remove supervision by Job and Family Services.

{¶9} The primary dispute at the hearing was whether the grandmother had ended her relationship with Richard and the extent to which she understood that she could not allow A.P. to have contact with him. Although the grandmother had told her caseworker that she had ended her relationship with Richard in August 2010, she admitted at the hearing that their relationship had continued for at least three more months. The guardian ad litem presented evidence that the grandmother and Richard had exchanged text messages for even longer. For that reason, the guardian no longer believed that the grandmother was a suitable custodian for A.P. and asked the juvenile court to remove her from the case plan.

{¶10} In addition to the evidence about the grandmother's relationship with Richard, the grandmother and Job and Family Services presented evidence about the significant bond and attachment between the grandmother and A.P. and the progress that the grandmother had made on the reunification goals of the case plan. It was not disputed that the grandmother consistently visited A.P. and that their visits went well. The grandmother had been regularly participating in individual counseling and, more recently, had been involved in joint counseling with A.P. Her individual counselor testified that the grandmother was learning to set boundaries with people and make appropriate decisions. The therapist who conducted the joint sessions testified about the "healthy bond" and "very appropriate attachment" between the grandmother and A.P. and noted that A.P. looked to the grandmother for support, had a loving respect for her, and followed her guidance. She also testified that the grandmother's interaction with A.P. and ability to

recognize how her choices affect the child had significantly improved during the previous few months.

{¶11} In her closing argument to the juvenile court, the guardian ad litem argued that the grandmother should be removed from the case plan because she was an unsuitable relative to assume custody of the child. In opposition, the grandmother argued that she was not simply a relative who was seeking legal custody, but instead was already the child's legal custodian and had the right to be part of the case plan.

{¶12} Job and Family Services argued that, although it no longer supported expanding the grandmother's visitation because it was uncertain about the status of her relationship with Richard, it also did not support the guardian's request to remove her from the case plan. The agency stressed that its philosophy, as well as the underlying goal of Ohio's dependency statutes, was for the agency to assume "temporary" custody of a child while it assisted the family in working toward reunification. Given the positive family bond between A.P. and her grandmother and the progress that the grandmother had made on the reunification goals of the case plan, Job and Family Services expressed its position that reunification of A.P. with the grandmother continued to be the appropriate goal of the case plan.

{¶13} The juvenile court ordered that the agency remove the grandmother from the case plan based on its conclusion that she had lost her status as the child's custodian and was not a suitable relative to become the custodian of A.P. The following month, because Job and Family Services had found no other suitable relative for placement of A.P., it moved for permanent custody.

{¶14} Although the grandmother immediately appealed the juvenile court's order that removed her from the case plan and denied her motion for legal custody, this Court dismissed

that appeal for lack of a final, appealable order. *In re A.P.*, 196 Ohio App. 3d 500, 2011-Ohio-5998, ¶ 15 (9th Dist.). Because the juvenile court had stayed its proceedings pending the outcome of the prior appeal, the grandmother was removed from the case plan after the appeal was dismissed. Job and Family Services again moved for permanent custody of A.P. and the grandmother renewed her motion for legal custody. Following a hearing, the juvenile court granted the agency permanent custody and denied the grandmother's motion for legal custody. The grandmother has appealed, assigning three errors.

## REMOVAL OF GRANDMOTHER FROM CASE PLAN

{¶15} The grandmother's first assignment of error is that the juvenile court violated her fundamental rights as A.P.'s legal custodian by removing her from the case plan and ultimately placing A.P. in the permanent custody of Job and Family Services. Although the grandmother has based her legal argument on both the United States Constitution and the Ohio Revised Code, this Court is more persuaded by her statutory argument and will limit its review accordingly.

{¶16} This Court has repeatedly emphasized that the juvenile court's authority in abuse, dependency, and neglect cases is strictly governed by a comprehensive statutory scheme set forth in Chapter 2151 of the Ohio Revised Code. *E.g., In re I.S.*, 9th Dist. No. 24763, 2009-Ohio-6432, ¶ 10-11. The grandmother has argued that Ohio's dependency and neglect statutes explicitly recognize a legal custodian as a person who has assumed the parental role in a child's home and is entitled to certain procedural protections in abuse, dependency, and neglect cases. Specifically, she maintains that the juvenile court violated its authority under Chapter 2151 of the Ohio Revised Code when it removed her from the case plan and prevented Job and Family Services from continuing to work toward returning A.P. to her home.

{¶17} As the grandmother emphasized to the juvenile court, the Ohio Revised Code explicitly contemplates that, as A.P.'s legal custodian, she had rights as the child's legally-recognized caretaker, which were subject only to the residual rights of A.P.'s parents. Section 2151.01.1(B)(21) defines "[l]egal custody" as "a legal status that vests in the custodian the right to have physical care and control of the child and to determine where and with whom the child shall live, and the right and duty to protect, train, and discipline the child and to provide the child with food, shelter, education, and medical care, all subject to any residual parental rights, privileges, and responsibilities."

{¶18} The parties did not dispute that the grandmother was A.P.'s legal custodian at the time Job and Family Services commenced this dependency and neglect case. The agency alleged that A.P. was dependent due to the condition or environment of the home where she lived under the care of the grandmother. Job and Family Services later filed the initial case plan that focused on remedying the problems in the grandmother's home that posed a risk to A.P.'s safety. After A.P. was removed from the grandmother's home and placed in the temporary custody of Job and Family Services, the agency began reunification efforts, with a goal of returning A.P. safely to the grandmother's home. The parties worked toward reunification for the next several months.

{¶19} It was not until after the guardian ad litem moved the juvenile court to remove the grandmother from the case plan that Job and Family Services and the juvenile court took the position that, when the juvenile court placed A.P. in the temporary custody of Job and Family Services, the agency became the child's legal custodian and the grandmother lost her status as legal custodian. Although it did not further explain in its order, the juvenile court apparently based its conclusion on the definition of "[c]ustodian" set forth in Section 2151.01.1(B)(12) of the Ohio Revised Code.

{¶20} Section 2151.01.1 does not define the term "legal custodian" but instead defines "[c]ustodian" as "a person who has legal custody of a child *or* a public children services agency . . . that has permanent, temporary, or legal custody of a child." Given that statutory language is to be construed according to common usage, the juvenile court evidently focused on the word "or," which is commonly defined as a disjunctive term that connects two alternatives. R.C. 1.42; *Webster's Third New International Dictionary* 1585 (1993). Construing "or" as a disjunctive connector, the juvenile court could construe this language to mean that a "[c]ustodian" is either a person with legal custody or the agency with temporary custody, but that it cannot be both at the same time. Given that it had placed A.P. in the temporary custody of Job and Family Services, the agency became her custodian, so the juvenile court concluded that the grandmother lost her status as custodian at that time. Moreover, by transferring custody of A.P. to the agency, the grandmother no longer had the right to determine where and with whom A.P. would live, nor could she exercise her other rights and duties as a legal custodian.

{¶21} Reading the definition of "[c]ustodian" in isolation, the juvenile court's construction might seem reasonable. Considering this term as it is used in Chapter 2151, however, it would also be reasonable to construe the definition to mean that a custodian is either the person with legal custody *or* the agency with temporary custody, depending on the context in which the term is used. Section 1.02(F) of the Ohio Revised Code further provides that "'[a]nd' may be read 'or' and 'or' may be read 'and' if the sense requires it."

{¶22} This Court must also construe the definition in a manner that achieves a reasonable result, reading it within the context of the statutes in which it is applied, and considering the object sought to be attained and any administrative construction of the term. R.C. 1.47(C); R.C. 1.49(A), (B), and (F). When the term "[c]ustodian" is construed within the

context of the case planning provisions of Chapter 2151 of the Ohio Revised Code, this Court must conclude that the juvenile court's construction of the term led to an unreasonable result, which undermined the overriding goal of Chapter 2151 to attempt to reunify this family and return the child to her home.

{¶23} Other than the disjunctive word "or" in the definition of custodian, there is no language in Chapter 2151 to suggest that the juvenile court's order of temporary custody to Job and Family Services terminated the grandmother's status as A.P.'s legal custodian, insofar as that status pertained to the reunification and case planning efforts that were required in this case. To begin with, although the definition of "[c]ustodian" includes an agency that has temporary custody of the child, that status is explicitly intended to be "temporary." It is a status of necessity that grants the agency the temporary legal right and duty to care for a child who has been removed from the custody of her permanent caretaker. "Temporary custody" is defined in Section 2151.01.1(B)(55) as legal custody of a child who has been removed from the home that "may be terminated at any time at the discretion of the court[.]" Section 2151.35.3(F) further provides for termination of an order of temporary custody after one year, if not extended, and prohibits the juvenile court from extending temporary custody beyond two years.

{¶24} On the other hand, under Section 2151.42(B) of the Ohio Revised Code, the juvenile court's 2009 order that placed A.P. in the grandmother's legal custody was "intended to be permanent in nature." Section 2151.42(B) further provides that the juvenile court "shall not" modify or terminate a legal custody order unless it explicitly finds, based on facts that have arisen since the prior order or were unknown to the court at that time, "that a change has occurred in the circumstances of the child or the person who was granted legal custody, and that

modification or termination of the order is necessary to serve the best interest of the child." R.C. 2151.42(B).

{¶25} Job and Family Services did not seek to modify or terminate the juvenile court's 2009 legal custody order under Section 2151.42(B), nor did the juvenile court make either of the required statutory findings that would have authorized it to modify or terminate its prior legal custody order. Although Job and Family Services suggests that such findings were not necessary, citing this Court's decision in *In re Burmeister*, 9th Dist. No. 19157, 1999 WL 241219 (Apr. 14, 1999), the reasoning of *Burmeister* has no application here because that appeal predated enactment of Section 2151.42 of the Revised Code.

{¶26} Rather than pursuing a modification or termination of the prior legal custody order under Section 2151.42(B), Job and Family Services commenced a new dependency case by filing a complaint under Section 2151.27 of the Ohio Revised Code, alleging that A.P. was a dependent child based on the conditions in her home environment. Section 2151.04(C) authorized temporary state interference with the grandmother's caretaking role and custodial rights for the protection of A.P. because, by later stipulation of the parties, the child's condition or environment warranted the state to assume her guardianship.

{¶27} Under Section 2151.41.2(A)(1) and (2) of the Ohio Revised Code, the agency was required to prepare and maintain a case plan for A.P. because it filed a complaint alleging that she was a dependent child and later obtained temporary custody of her. Although the child's safety is to be of "paramount concern," the overriding purpose of the case plan is for the agency to help the family remedy its problems and return the child to her "home" or, if that is not possible, to find a suitable caregiver who is part of her extended family. R.C. 2151.41.2(G), (H),

and (J). Section 2151.41.2(F)(1) further provides that all parties, including the "parent, guardian, or custodian," are bound by the terms of the case plan.

{¶28} Although the term "home" is not defined in Chapter 2151, the child's home is explicitly recognized as the place where the child resided, prior to the commencement of an abuse, dependency, of neglect case, with one or both of her parents, guardian, or custodian. R.C. 2151.03, 2151.03.1, and 2151.04. Section 2151.01.1(B)(1) further defines "[a]dequate parental care" to include providing for the child's basic needs by the child's "parent, guardian or custodian."

{¶29} In addition to specific statutory requirements for case plans, Section 2151.41.2(C)(1) of the Ohio Revised Code required the adoption of administrative regulations to control the content and format of case plans and establish procedures for developing, implementing, and changing case plans. Throughout those administrative regulations, case planning and reunification efforts are required to be directed to the person who was the child's legal caretaker at the time the case began: a parent or parents, guardian, or custodian.

{¶30} From the beginning of a dependency case, the child's legal custodian, who stands in the place of a parent in the child's home, is included in the reunification process. Section 5101:2-39-01(A) of the Ohio Administrative Code requires that the agency make reasonable efforts "to provide support and services to children and families in their homes to prevent removal." If the child is removed from the home, the agency is required to provide "the parent, guardian, or custodian" with verbal and written information that includes the reason for removal, agency contact information, and a visitation schedule prior to issuing a formal case plan. Section 5101:2-39-01(J) and (K).

**{¶31}** That provision obviously contemplates that the "custodian" is the person who had legal custody of the child at the time of removal and that the custodian retains that status for reunification purposes after the child is removed from the home. Although a child is sometimes physically removed from the home before the juvenile court grants temporary custody to the agency, it would be illogical to require the agency to provide the custodian with procedural rights, particularly a visitation schedule prior to the case plan, if it were intended that those rights would be lost if and when the agency later acquires temporary custody. To construe the term "custodian" in that manner would also defeat the underlying goal of the case plan to return the child to the home.

**{¶32}** Even after the formal transfer of custody to the agency, although the agency acquires temporary legal rights and obligations as the child's custodian, for case planning purposes, the term "custodian" continues to refer to the person who, prior to the child's removal from the home, cared for the child under an order of legal custody. For example, Section 5101:2-38-05 of the Administrative Code sets forth specific case plan requirements for children "in custody or under protective supervision" of a public children services agency. Those regulations require that, if the agency initiates the case planning process, it must provide verbal and written notice to certain parties, including the "custodian" and allow the custodian to participate in the development, implementation, and review of the case plan. Ohio Admin. Code 5101:2-38-05(B)(1).

**{¶33}** More directly on point, Section 5101:2-42-92 of the Ohio Administrative Code requires the agency to develop a visitation schedule for "each child in temporary custody" to provide "an opportunity for regular and frequent visitation" with his "custodian." Section 5101:2-42-92(B) requires the agency to consult the custodian in developing the visitation plan

and sets forth the factors that should be considered to determine the frequency, duration, and location of visits. Restrictions on the frequency, duration, and location of the visits must be based on specific factors that include potential harm to the child and the "custodian's failure to be available for more frequent or longer visits." *Id*. The only reasonable interpretation of this language is that the person who was the "custodian" prior to the removal of the child from the home retains that status for case planning purposes after the child is placed in the temporary custody of the agency.

{¶34} It is apparent throughout the administrative regulations that the "custodian" to whom the agency must direct case planning reunification efforts is not the agency itself, but can only be the person who formerly had physical and legal custody of the child. Sections 5101:2-38-09 and 5101:2-40-02(T) of the Ohio Administrative Code require that the agency and its ongoing service providers gather and review information about each case plan at least every three months. The stated purpose of the review includes ensuring that continued efforts are made to "evaluate the effectiveness of supportive services offered and provided to the child, his or her parent, guardian, custodian, or pre-finalized adoptive parent, or substitute caregiver." For children who are placed outside the home, a semi-annual administrative review of the case plan is required that must include the agency's "conclusion regarding the appropriateness of supportive services provided to the child and/or his or her parent, guardian, or custodian" and an "[e]valuation of whether services provided to the child and his or her parent, guardian, or custodian will help the child return to a safe environment, if applicable." Ohio Admin. Code 5101:2-38-10(N)(2) and (4).

{¶35} The references quoted here are only examples of how the term "custodian" is consistently used within the context of statutory and administrative provisions governing the case

planning process. Given the required family reunification purpose of the case plan and the use of the term "custodian" within the context of the applicable provisions of the Ohio Revised Code and Ohio Administrative Code, this Court can only conclude that, for purposes of the child's case plan, the child's legal custodian does not lose her status as "custodian" when the juvenile court places the child in the temporary custody of a children services agency. Therefore, the juvenile court incorrectly concluded that the grandmother had lost her statutory right to participate in the reunification efforts of the case plan and continue working toward reunification with A.P.

{¶36} Although the guardian ad litem may have raised a legitimate concern about Richard posing a potential threat to A.P., the juvenile court had other means to protect A.P. that would have allowed the grandmother to remain on the case plan and continue working toward the goal of returning A.P. to her home. For example, it could have required continued supervision of the visits or added requirements to the case plan to ensure that A.P. had no contact with Richard. *See also* R.C. 2151.35.9(A)(1)(a) (juvenile court may issue an order to restrain the conduct of the custodian that may be harmful or detrimental to the child). Instead, by removing the grandmother from the case plan, as evidenced by the almost immediate motion for permanent custody filed by Job and Family Services, the juvenile court effectively cut off any efforts of the agency to reunify the family and defeated the underlying purpose of the statutory mandates under Chapter 2151 of the Ohio Revised Code. Because the juvenile court deprived the grandmother of her procedural rights under Chapter 2151 of the Ohio Revised Code, her first assignment of error is sustained.

## REMAINING ASSIGNMENTS OF ERROR

{¶37} The remaining assignments of error have been rendered moot. Accordingly, they will not be addressed.

## CONCLUSION

{¶38} The grandmother's first assignment of error is sustained. Her remaining assignments of error were not addressed because they have been rendered moot. The judgment of the Medina County Juvenile Court is reversed, and this matter is remanded.

Judgment reversed
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

_____
CLAIR E. DICKINSON
FOR THE COURT

BELFANCE, J.
CONCURS.

CARR, J.
CONCURS IN JUDGMENT ONLY.

APPEARANCES:

DANIEL GIGIANO, Attorney at Law, for Appellant.

JENNIFER A MOORE, Attorney at Law, for Appellee.

EUGENE ELIAS, Attorney at Law, for Appellee.

RICHARD BARBERA, Attorney at Law, for Appellee.

JENNIFER MATYAC, Guardian ad litem.