[Cite as *In re M.B.*, 2019-Ohio-3166.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: M.B.
     R.B.
     A.B.

C.A. No.     29180

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE Nos.    DN 17-05-359
                  DN 17-05-360
                  DN 17-05-361

DECISION AND JOURNAL ENTRY

Dated: August 7, 2019

CARR, Judge.

{¶1}    Appellant Father appeals the judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated the protective supervision of appellee Summit County Children Services Board ("CSB" or "the agency"), retained his three children in the legal custody of appellee Mother, and denied his motions for visitation and to modify the case plan. This Court reverses and remands.

I.

{¶2}    Father and Mother are the biological parents of M.B. (d.o.b. 1/22/04), R.B. (d.o.b. 4/22/05), and A.B. (d.o.b. 8/17/07), who were born during the course of the parents' marriage. In 2008, Mother and Father initiated divorce proceedings, which culminated in a judgment decree of divorce. In 2014, cases involving each of the children were filed in the Summit

County Juvenile Court. As a result of those cases, the children resided with Mother, while Father enjoyed visitation with the children.

{¶3} In 2017, CSB filed complaints alleging that the three children were abused and dependent based on allegations of sexual abuse by Father and the paternal grandmother, as well as other behavior by Father which caused fear and distress in the children. The agency immediately obtained an order that the children would remain in the legal custody of Mother under an order of protective supervision by CSB. Father was to have no contact with the children. After the shelter care hearing, the magistrate lifted the no contact order and allowed Father to have supervised visitation. Father filed a motion for temporary custody to CSB, with placement of the children in a foster home, based on his concerns that Mother was brainwashing the children and alienating them from him. Father also moved for a psychological evaluation of Mother and to transfer the children from their current counseling center to a counseling center Father identified as equipped to address issues related to divorce and parental manipulation. Shortly thereafter, Father filed a motion for legal custody and alleged that Mother and CSB were engaged in a conspiracy to alienate the children from Father.

{¶4} After an adjudicatory hearing, the juvenile court found each child to be dependent pursuant to R.C. 2151.04(C). The trial court dismissed all allegations of abuse and the remaining allegations of dependency as to each child. After a dispositional hearing, the juvenile court maintained the children in Mother's legal custody and ordered CSB to provide protective supervision. Based in part on the recommendation of the guardian ad litem, the juvenile court suspended Father's visitation with the children. The agency's case plan was adopted as the order of the court.

**{¶5}** CSB later filed a motion to terminate protective supervision but withdrew it a few months later based on Father's progress on his case plan objectives. Because the children's counselors reported that the children were not yet ready to visit with Father or engage in joint counseling with him, CSB moved for a first six-month extension of its protective supervision to allow time for additional progress. Father filed a motion for visitation, a reallocation of parental rights and responsibilities, and a modification of the case plan to address the issue of parental alienation by Mother over the past ten years. Father appended to his motion a report by a parental alienation expert who opined that all four factors indicative of parental alienation existed regarding M.B., R.B., and A.B. Father requested that the juvenile court address his motions at the hearing scheduled for May 22, 2018.

**{¶6}** The record indicates that the parties appeared for a hearing on May 22, 2018. The juvenile court issued a judgment in which it merely continued the hearing to begin on July 30, 2018, without issuing any orders addressing Father's motions for visitation and a modification of the case plan to address the issue of parental alienation. Two months later, CSB filed a renewed motion to terminate its protective supervision.

**{¶7}** At the beginning of the five-day hearing beginning on July 30, 2018, the juvenile court informed the parties that the only pending motions before it were CSB's written motion to terminate permanent custody and the parents' implicit motions for legal custody. When Father's attorney reminded the court that Father also had pending motions to modify the case plan and for visitation in the interim, the juvenile court asserted that it would only consider final dispositional motions, not any preliminary requests, because it planned to issue a final judgment fully disposing of the case after hearing the evidence. Father argued that, despite his frequent and repeated requests that CSB add an objective to the case plan to address the issue of parental

alienation, the agency continually balked at the suggestion and the juvenile court had not addressed the issue as Father raised it in a written motion.

{¶8} The juvenile court heard evidence over the course of a five-day hearing. Although the trial court heard the testimony of Father's witness who was declared to be an expert in the area of parental alienation, it did so solely in consideration of whether the children were exhibiting signs of parental alienation. At the conclusion of the hearing, the trial court denied Father's motions for a reallocation of parental rights and responsibilities, to resume his visitation, and to modify the case plan to address issues of parental alienation. The court wrote that it "cannot find that parental alienation occurred as to these children and their father" based in part on its inability to accord much weight to the expert's conclusion. In this regard, the juvenile court expressed concern that it did not know what information the expert considered and because the expert never observed the children with either parent.

{¶9} The juvenile court granted CSB's motion to terminate the agency's protective supervision and retained the children in the legal custody of Mother. Father was not awarded any visitation at that time but was granted leave to move for visitation in the future should he engage in meaningful counseling in the interim. Father filed a timely appeal and raises two assignments of error for consideration. This Court addresses the second assignment of error first, as it is dispositive of the appeal.

II.

## ASSIGNMENT OF ERROR II

THE COURT'S REFUSAL TO MODIFY THE CASE PLAN TO CLINICALLY ASSESS THE CHILDREN AND/OR TREAT THE CHILDREN FOR PARENTAL ALIENATION WAS AN ABUSE OF DISCRETION AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶10} Father argues that the juvenile court erred by failing to modify the case plan to include an assessment to determine whether the children rejected Father based on parental alienation by Mother, and, if so, to include a requirement for treatment to address that specific issue. This Court agrees.

{¶11} A public children services agency must prepare and maintain a case plan regarding children with whom it is involved, including children living at home but subject to an order charging the agency with protective supervision. R.C. 2151.412(A)(3). One of the primary goals of any case plan is to "respect and support the integrity of the child[ren]'s family unit." Ohio Adm.Code 5101:2-40-02(A)(1). The agency maintains a continuing duty to assess the ongoing safety of children involved with the agency, as well as the "appropriateness of the intensity and duration of the services provided to meet child and family needs throughout the duration of a case." R.C. 5153.16(B)(1) and (2). In addition, the agency is required to conduct semiannual administrative reviews of the case plan, to include a meeting with all parties, to determine, among other things, what progress has been made in alleviating the concerns that precipitated the agency's involvement. R.C. 2151.416(C), (D). In conducting the case plan reviews, the health and safety of the children "shall be the paramount concern." R.C. 2151.416(A).

{¶12} Pursuant to R.C. 2151.412(F)(2), "[a]ny party may propose a change to a substantive part of the case plan * * *. A party proposing a change to the case plan shall file the proposed change with the court and give notice of the proposed change in writing * * * to all parties and the child[ren's] guardian ad litem." The parties then have seven days in which to object to the proposed change. *Id.* Where no party objects, the juvenile court may approve the proposed change without a hearing; but if the court does not approve the change in the absence

of objections, it must schedule a hearing on the matter. R.C. 2151.412(F)(2)(b). This Court has recognized the propriety of a party other than the agency filing a proposed case plan amendment. *See In re A.P.*, 9th Dist. Medina No. 12CA0022-M, 2012-Ohio-3873, ¶ 7-15.

{¶13} Because case plans are designed to address services necessary to facilitate a family's reunification efforts, it is axiomatic that any proposed modification must be addressed at a time when its adoption or rejection would still give the family time to work on objectives to address ongoing issues hindering stability. When a trial court considers the propriety of a proposed case plan modification at the same time it is determining the appropriate final disposition of the children, it has effectively predetermined the inefficacy of the proposed modification and foreclosed a prospective custodian from demonstrating the ability to provide for the care and well-being of the children. The statute, too, recognizes the preliminary nature of determining whether proposed amendments to case plans are appropriate by requiring that the trial court schedule a hearing on the matter within thirty days of the request for a modification. R.C. 2151.412(F)(2)(a).

{¶14} In this case, Father raised the issue as early as the shelter care hearing, only one week after CSB filed its complaints, that the children had been subjected to manipulation by Mother and that they had begun expressing an aversion to having a relationship with Father. Not only Father, but Father's brother in law, testified to the change in the children's attitudes towards him. When CSB filed its proposed case plan shortly thereafter, however, it did not contain any objective to address the issue of parental alienation. A couple days later, Father filed a motion for CSB to assume temporary custody of the children and place them in a foster home based on Father's concern that Mother was manipulating the children to compel them to ostracize Father.

{¶15} Before the juvenile court issued an adjudicatory judgment, M.B. and R.B. each executed a written acknowledgement of their right to attend hearings in the juvenile court, choosing to attend some court hearings. In the comment section of their acknowledgments, M.B. wrote that he does not visit Father who sexually abused him, while R.B. wrote that she does not want to see Father.

{¶16} Father filed a lengthy "trial brief" relevant to adjudication in which he went into great detail supporting his concerns that Mother had engaged in conduct designed to alienate the children from Father. Based on evidence presented at the adjudicatory hearing, the juvenile court could not find that the children had been abused by Father. The juvenile court premised its sole finding of dependency on the negative effect of the parents' acrimonious divorce on the children, and the highly disproportionate response of the children towards Father as compared to his actual conduct. Based on the children's seemingly unfounded extreme aversion to Father, the juvenile court "question[ed] the ability of the parents to assure that these children are being properly cared for and that their mental health needs are being met." Despite the trial court's concern that the children's attitudes towards Father did not seem appropriate based on Father's actions, CSB did not modify its proposed case plan to address alleged issues of manipulation of the children by Mother.

{¶17} Throughout the pendency of the case, Father repeatedly raised his concerns that Mother had engaged in long-term conduct designed to alienate the children from Father, and that the children had been thereby manipulated to develop an extreme aversion to Father, Father's family, and anything (activities, sports, where the children attended school) Father supported. When CSB initially moved to terminate protective supervision, the agency acknowledged the children's ongoing desire not to see Father. Nevertheless, CSB believed that its involvement was

no longer necessary because the children were safe in Mother's care. In response, Father implored the agency to investigate the issue of parental alienation. He requested that Mother be ordered to undergo a psychological evaluation to determine her role in manipulating the children to convince them that Father had engaged in egregious conduct. In addition, because the children were refusing to have any interaction with Father, he obtained an expert in the field of parental alienation to evaluate the situation. While the expert evaluated the matter to the best of her ability, she did not have access to the children's records, Mother, the ability to observe the children with either parent, or the children themselves, as she would have had the issue been included as a case plan objective.

{¶18} CSB modified the case plan twice, once after the juvenile court ordered a trauma assessment for the children and a parenting evaluation for Mother after the dispositional hearing, and once to add a psychiatric evaluation and individual counseling for Father and to add individual counseling for Mother, in part to address her need for parental boundaries and discipline. Based on Father's progress, CSB withdrew its motion to terminate protective supervision and instead requested a six-month extension. Although the children were doing well in Mother's care, their counselors advised that they were not ready to visit with Father or engage in joint counseling with him.

{¶19} Mere days later, Father filed his motion to modify the case plan to address the root of the problem that the case plan had no objective to address, specifically, Father's allegation of ongoing parental alienation of the children by Mother. Despite the children's engagement in counseling, they still refused to have any contact or relationship with Father or his family. They discontinued participating in sports Father had initiated with them. In addition,

Mother removed the children from the parochial school associated with Father's church and enrolled them in public school, further severing a connection with Father.

{¶20} Father requested that his motion to modify the case plan be heard at a hearing scheduled for May 22, 2018. At that time, CSB had no final dispositional motion pending, as it had recently moved for a six-month extension of the agency's protective supervision. The juvenile court later continued the May 22 hearing and rescheduled it to begin on July 30, 2018. In the interim, CSB filed a motion to terminate its protective supervision on July 23, 2018.

{¶21} When the parties appeared for the July 30 hearing, the juvenile court informed them that the pending motion for consideration was CSB's motion to terminate protective supervision and retain the children in Mother's legal custody, a motion which it recognized that Mother supported. When Father reminded the court of his pending motions for visitation and a case plan modification, the juvenile court asserted that the purpose of the scheduled hearing was to finalize issues regarding the children's custody, not to address a modification of the case plan or any other preliminary matters. Although the juvenile court acknowledged Father's pending motions, it asserted that it nevertheless intended to make a final determination as to custody at the conclusion of the hearing without consideration of any issues preliminary to a resolution of custody. When Father reminded the court that his preliminary issues were scheduled for consideration at the May 22 hearing, the juvenile court agreed but asserted that that hearing had been continued until July 30. Nevertheless, the juvenile court reiterated its refusal to consider the preliminary issues, including Father's motion to modify the case plan, at the hearing.

{¶22} During opening statements, Mother conceded that she had not filed a motion to terminate the agency's protective supervision because she was waiting to see if CSB believed there was any merit to extending the juvenile court's jurisdiction to allow the parties to continue

to work on case plan objectives. Mother asserted that services had been helpful for the children but not helpful to solving the problems between the children and Father. Accordingly, Mother requested the termination of the agency's protective supervision because CSB had "worked as hard as it could" and there was nothing more that could be done to facilitate a relationship between Father and the children at that time.

{¶23} In response, Father reiterated his belief that the juvenile court had agreed to consider extending the agency's protective supervision to further facilitate efforts to reunify the children with him. When the juvenile court suggested that that could happen without the involvement of CSB, Father responded that the underlying issue of parental alienation, never addressed by the agency, would be an ongoing barrier to Father's ability to reestablish a relationship with his children. Father expressed his frustration that the children's counseling sessions had not been at all effective because the children continued to reject Father. At the time of the hearing, Father had not seen the children in eleven months and they remained adamant about their desire not to see him despite their compliance with the case plan objective that they engage in counseling. Father explained that the counseling efforts were unsuccessful because they did not address the underlying issue of parental alienation, a situation that requires intervention by an expert trained to address that issue. Despite Father's repeated requests to the agency, and his agreement to pay for all treatment, CSB repeatedly refused to consider addressing the issue of parental alienation, instead asserting that the juvenile court must determine whether parental alienation is an issue that must be addressed in this case.

{¶24} The guardian ad litem noted that Father had raised the issue of parental alienation ad nauseum from the very beginning of the case, but that Father should have concentrated on addressing his own issues instead. The guardian ad litem asserted that the children are safe and

"feel very liberated" without Father. She moreover asserted that the children were victims of sexual abuse even if the juvenile court had not found that to be true.

{¶25} The juvenile court proceeded with a five-day hearing to determine the appropriate final disposition for the children. Although the court heard testimony from Father's expert in the area of parental alienation, the juvenile court ultimately discounted it based, in part, on the expert's failure to interview the children or observe them with either parent.

{¶26} Based on Father's ongoing concern that Mother had manipulated the children to reject Father, the children's complete aversion to reestablishing a relationship with Father despite their engagement in counseling and no contact with Father for eleven months, and the unwillingness of CSB and the guardian ad litem to take seriously Father's allegations because the children were safe and secure with Mother, the juvenile court should have at a minimum considered the merits of Father's motion to modify the case plan at a time when any issue could still be addressed to effect the primary goals of supportive services, e.g., to "respect and support the integrity of the child[ren]'s family unit." *See* Ohio Adm.Code 5101:2-40-02(A)(1). Father proposed an amendment to the case plan as permitted by R.C. 2151.412(F)(2). He requested a hearing on the matter. The juvenile court continued the hearing but then refused to consider any preliminary matters that would extend the court's jurisdiction and maintain the children under the agency's protective supervision to allow for further reunification efforts. As in *In re A.P., supra*, the proper procedure would have been for the juvenile court to fully consider whether a case plan amendment was warranted in a separate hearing in advance of the final dispositional hearing. Father's first assignment of error is sustained.

## ASSIGNMENT OF ERROR I

THE COURT'S DENIAL OF FATHER'S REQUEST FOR CUSTODY AND VISITATION WAS AN ABUSE OF DISCRETION AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶27} Father argues that the juvenile court's denial of his motions for visitation and legal custody were against the manifest weight of the evidence. Our resolution of Father's second assignment of error makes any determination as to his first premature.

### III.

{¶28} Father's second assignment of error is sustained. This Court declines to address the first assignment of error. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is reversed and the cause remanded for further proceedings consistent with this opinion.

Judgment reversed,
and cause remanded.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee Summit County Children Services Board.

DONNA J. CARR
FOR THE COURT

CALLAHAN, P.J.
HENSAL, J.
CONCUR.

APPEARANCES:

DANIEL A. LEISTER, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.

MOTHER, pro se, Appellee.

SARAH HURLBURT, Attorney at Law, Guardian ad litem.