[Cite as *In re J.H.*, 2019-Ohio-4510.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

IN RE: J.H.
     J.H.
     M.H.
     B.H.

C.A. No.     19CA011522

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE Nos.    17JC52003
                17JC52004
                17JC52005
                17JC52006

DECISION AND JOURNAL ENTRY

Dated: November 4, 2019

---

SCHAFER, Judge.

{¶1} Appellant, M.H. ("Father"), appeals from a judgment of the Lorain County Court of Common Pleas, Juvenile Division, that terminated his parental rights and placed his four minor children in the permanent custody of Lorain County Children Services ("LCCS"). This Court reverses and remands.

I.

{¶2} Father is the biological father of J.H., born October 7, 2004; J.H., born January 24, 2006; M.H., born March 6, 2007; and B.H., born August 29, 2008. The children's mother voluntarily relinquished her parental rights and did not appeal from the trial court's judgment.

{¶3} When this case began, these children were living with their paternal grandmother ("Grandmother") and neither parent lived with them. The record does not explain, however, when or why the children began living with Grandmother or whether the custodial arrangement

was voluntary, or court ordered. In fact, the record suggests that LCCS knew more about these parties than is reflected in the record. There may have been an agency history with this family, but no prior case records or evidence about prior agency involvement with this family is included in this record.

{¶4} On June 19, 2017, LCCS filed complaints, alleging that the children were abused, neglected, and dependent because Grandmother had been emotionally and physically abusing them and was otherwise failing to meet their basic needs. The children were later adjudicated abused, neglected, and dependent and placed in the temporary custody of LCCS.

{¶5} From the beginning of this case, LCCS had identified Father as the father of the children. Although there is no explanation in the record about how Father's paternity was established, no one disputes that he is the children's father. The complaint correctly spelled his name, identified his birthdate, and included an address in Cleveland. For the first year that this case was pending, LCCS attempted to serve Father at that address in Cleveland, which it apparently believed was his last known address. The mailings were initially returned with postal markings of "Vacant" and "Attempted not Known[.]"

{¶6} Father was later served with the complaint by publication after LCCS filed an affidavit stating that it had been unable to locate Father through the following efforts: "1. Inquired of Mother; 2. Inquired of Legal Guardian." There is nothing in the record to indicate that LCCS made any other efforts to locate Father during the first 14 months of this case. LCCS continued to send pleadings to Father at the same address, despite the mailings being returned marked, "No Such Number" and "No Such Street."

{¶7} During August 2018, LCCS somehow learned that Father was incarcerated. Through a computer search at that time, LCCS located Father at Lake Erie Correctional

Institution. The prior and current caseworker each went to the prison once to meet with Father, not to provide him with any reunification services, but to ask him if he knew of any relatives who could take custody of the children. The second caseworker did not meet with Father until after LCCS had moved for permanent custody. Although Father expressed an interest in having custody of his children and had only a few months of incarceration remaining, Father was never included in the case plan.

{¶8} On November 9, 2018, LCCS moved for permanent custody of the four children. Father was served with a copy of the permanent custody motion at his correctional institution. The hearing was initially scheduled for March 7, 2019. Prior to that time, however, the trial court received communication from Father, which it construed as a request for appointed counsel. Shortly before the hearing, the trial court appointed counsel for Father, and counsel appeared without Father at the March 7 hearing.

{¶9} At the March 7 hearing, Mother's counsel informed the court that Mother wished to voluntarily relinquish her parental rights. The trial court questioned Mother and accepted her waiver of rights, but continued the permanent custody hearing as to Father because he had not had an opportunity to discuss the case with his appointed counsel. The hearing was rescheduled for May 13, 2019.

{¶10} On April 23, 2019, nearly three weeks before the scheduled hearing date, Father's counsel filed a motion to transport Father from prison to attend the permanent custody hearing. The trial judge did not rule on the motion until May 13, 2019, immediately prior to the commencement of the hearing. Father's counsel explained that he had been unable to communicate with Father and was hoping to confer with him in person prior to the hearing. The

trial judge denied the request to transport, as well as counsel's oral request for a continuance, and proceeded with the permanent custody hearing.

{¶11} Following the hearing, the trial court terminated Father's parental rights and placed his children in the permanent custody of LCCS. Father appeals and raises three assignments of error.

II.

### ASSIGNMENT OF ERROR I

APPELLANT'S RIGHT TO DUE PROCESS WAS VIOLATED WHEN THE TRIAL COURT DENIED APPELLANT'S MOTION TO TRANSPORT[.]

### ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED IN FINDING THAT APPELLANT ABANDONED THE MINOR CHILDREN PURSUANT TO R.C. 2151414(e)(10)[.]

### ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED IN FINDING THAT THE AGENCY MADE REASONABLE EFFORTS AS IT PERTAINS TO APPELLANT PURSUANT TO R.C. 2151.49[.]

{¶12} This Court will address Father's assignments of error together because one of his arguments is dispositive. Although Father raises other problems in the trial court proceedings, this Court will confine its review to an error that tainted the entire trial court case: LCCS failed to justify its exclusion of Father from the case plan and its reunification efforts.

{¶13} "Permanent termination of parental rights has been described as 'the family law equivalent of the death penalty in a criminal case.' Therefore, parents 'must be afforded every procedural and substantive protection the law allows.'" *In re Hayes*, 79 Ohio St.3d 46, 48 (1997), quoting *In re Smith*, 77 Ohio App.3d 1, 16 (6th Dist.1991).

{¶14} Among the procedural protections afforded a parent before his parental rights can be terminated is a statutory mandate that the agency make reasonable efforts to reunify parents with their children, unless one of the specific situations in R.C. 2151.419(A)(2) exists, such as a conviction of certain crimes against the children or a prior involuntary termination of parental rights. There is nothing in the record to suggest that any of the R.C. 2151.419(A)(2) circumstances pertained to Father. Moreover, "[a]bsent a judicial finding that one of the circumstances enumerated in R.C. 2151.419(A)(2) exists, a children services agency is obligated to make reasonable reunification efforts and has the burden of demonstrating to the court that it made those efforts." *In re S.R.*, 9th Dist. Summit No. 27209, 2014-Ohio-2749, ¶ 40, citing R.C. 2151.419(A).

{¶15} As part of its obligation to make reasonable reunification efforts, LCCS was required to file a case plan in this case because it filed a complaint to allege that these children were neglected and dependent and sought to obtain temporary custody of them. R.C. 2151.412(A)(1) and (2). Case plan requirements are set forth in more detail in administrative regulations developed by the director of job and family services. *See* R.C. 2151.412(C)(1) and (2).

{¶16} Pursuant to Adm.Code 5101:2-38-05(E)(1), Father was a required party to the case plan. In preparing the case plan, not only was LCCS required to include Father on the case plan, but it was required to provide him an opportunity to participate in the case planning process and to "attempt to obtain an agreement among all parties," including Father, "regarding the content of the case plan." R.C. 2151.412(E); Adm.Code 5101:2-38-05(G)(1) and (2). If an agreement could not be reached, Father also should have been given the opportunity to present

evidence at the dispositional hearing to determine the contents of the case plan to be adopted by the court. Adm.Code 5101:2-38-05(G)(3).

{¶17} In this case, Father was not identified on the case plan as a party, nor was he provided any services, or given the opportunity to participate in the case planning process or dispute the contents of the case plan. Although the trial court ultimately faulted Father for failing to stay in touch with LCCS or participate in the case plan, according to the record, Father never saw the case plan or even knew that this case was pending until a caseworker came to see him 14 months into this case. He later received the permanent custody motion in prison.

{¶18} At no time during this case, however, was Father included on the case plan. At the permanent custody hearing, LCCS attempted to explain Father's lack of participation by stating, without explanation, that it had been unable to locate him for the first 14 months of this case.

{¶19} LCCS was required to prepare a case plan utilizing the Ohio Department of Job and Family Services Form 01410. Ohio Adm.Code 5101:2-38-05(A). Section 4.B. of Form 01410 includes a box where the agency can indicate that the identity or whereabouts of a parent are unknown, and that the "parent * * * cannot be located or offered services[,]" and a text box immediately below that box requires the agency to "[e]xplain what efforts were made to locate the parent[.]" Similarly, Form 01410 also includes an "Unavailable/Unable to Locate" box below the signature lines that explains why a required person did not sign the plan or participate in its preparation, but that part of the form also requires an explanation about why the parent did not sign or participate.

{¶20} The case plan in this case, however, does not include Father's name, any indication in either place on the form that he could not be located, nor does it detail the efforts

that LCCS made to locate him. The only explanation in the record about the efforts LCCS made to locate Father were that they asked the mother and Grandmother if they knew where he was. Even if LCCS had included that explanation on the case plan form, those minimal efforts to locate Father fell far short of reasonable. The agency knew Father's name and birthdate and believed that he lived in Cleveland, yet it was not until the agency somehow learned that Father was incarcerated that it conducted an online search that located him.

{¶21} The records of other juvenile court cases reveal far more thorough search efforts before an agency concludes that it is unable to locate a parent. For example, even 17 years ago, reasonable efforts to locate a parent included some searching of computer databases. *See In re T.B.*, 9th Dist. Summit No. 21124, 2002-Ohio-5036, ¶ 49. In the records of more recent cases, agencies typically exhaust numerous online databases before concluding that they are unable to locate a parent. Given that LCCS knew father's identity, birthdate, and potentially had dozens of directories, public records databases, and other online search engines available to help determine Father's whereabouts, the record fails to demonstrate that LCCS made reasonable efforts to locate him.

{¶22} The agency's exclusion of Father from all reunification and case planning efforts in this case completely undermined the integrity and legitimacy of the trial court proceedings and violated the statutory and constitutional rights of Father and his children. "[T]he overriding purpose of the case plan is for the agency to help the family remedy its problems and return the child to her 'home' or, if that is not possible, to find a suitable caregiver who is part of her extended family." *In re A.P.*, 9th Dist. Medina No. 12CA0022-M, 2012-Ohio-3873, ¶ 27, citing R.C. 2151.412(G), (H), and (J). *See also In re S.R.*, 9th Dist. Summit No. 27209, 2014-Ohio-

2749, ¶ 45 (reversing the trial court's permanent custody judgment because the agency, without justification, failed to include the known Father on the case plan.).

{¶23} For that reason, Father's third assignment of error is sustained. His remaining assignments of error are not addressed because they have been rendered moot. *See* App.R. 12(A)(1)(c).

### III.

{¶24} Father's third assignment of error is sustained as explained above. His remaining assignments of error were not addressed. The judgment of the Lorain County Court of Common Pleas, Juvenile Division, is reversed and remanded for proceedings consistent with this opinion.

Judgment reversed<br>and cause remanded.

—————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

_____
JULIE A. SCHAFER
FOR THE COURT

TEODOSIO, P. J.
CARR, J.
CONCUR.

APPEARANCES:

LINDSAY K. NICKOLLS, Attorney at Law, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and JENNIFER A. TOMECHKO, Assistant Prosecuting Attorney, for Appellee.

MICHAEL TOWNE, Attorney at Law, for Appellee.

JOHN PINCURA, Attorney at Law, for Appellee.

JEANETTE ROBINSON, Guardian ad Litem.